JOHN HUBER et al., Plaintiffs-Appellants, v. FRANK B. SEATON, Defendant-Appellee (Richard Janowitz, Indiv. and as agent and employee of Frank B. Seaton, Defendant).

Second District   No. 2—87—0224

Opinion filed January 28, 1988.

Bresnahan, Garvey, O'Halloran & Coleman, of Chicago, and John M. O'Halloran, of Geneva, for appellants.

John P. Callahan, of Law Offices of Querrey & Harrow, Ltd., of Geneva, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, John and Joan Huber, bring this appeal pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) from the judgment of the circuit court of McHenry County granting the defendant's, Frank B. Seaton's, motion for summary judgment on all counts against him of the amended complaint. The complaint set forth a cause of action in negligence against Seaton based on theories of a master-servant relationship, negligent hiring, failure to supervise and *res ipsa loquitur*. Codefendant Richard Janowitz is not a party to this appeal.

Janowitz was hired by Seaton to perform a plumbing repair on a residence at 134 Bright Oaks Circle in Cary, Illinois. The residence was owned by Seaton and leased to the Hubers. A propane torch allegedly was left ignited and unattended in the residence. A fire occurred in the premises, and plaintiffs alleged they incurred damages in the amount of $55,000. Seaton answered the complaint, generally denying the allegations of negligence against him in count I except for his ownership of the premises and the Hubers' tenancy. Seaton did not answer counts II and III of the complaint, which purported to state a cause of action in negligence against Janowitz. Seaton's subsequently filed motion for summary judgment was made on the basis Janowitz was an independent contractor and not his employee or agent. Seaton later also filed a motion to dismiss for insufficiency count IV of the plaintiffs' amended complaint, which purported to set forth a cause of action for negligence against him under the doctrine of *res ipsa loquitur*. The court granted Seaton's motion for summary judgment as to all counts against him. Plaintiffs' first appeal from the court's judgment was dismissed by this court on Seaton's motion as appellee that the court's judgment did not dispose of all issues or parties in the case. Subsequently, upon plaintiffs' request, the trial court included the necessary language pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

Attached to Seaton's motion for summary judgment were excerpts from the depositions of Janowitz and Seaton. Janowitz stated in his deposition that he had done some repair and plumbing work both at Barrington Square Five and Bright Oaks. He also stated he does all the plumbing around his own house and had done a few plumbing jobs for Frank Seaton.

After the time he started his employment at Ragnar Benson, he utilized proposal forms for the side jobs he did. It was a standard form he first made up when he started R & A Maintenance. He may have written up a form for Frank Seaton the first time he worked for him, but he had not used a form ever since. He had known Seaton for

between five and seven years. He thought Seaton initially got his name out of the yellow pages. He stated he had done plumbing, landscaping, carpentry, painting and tree-cutting work for Seaton. He did work for Seaton at Seaton's house in Cary and at Seaton's townhouse at Bright Oaks in Cary (the Hubers' residence). Seaton would call Janowitz up, tell him he had a job for him to do, Janowitz would do it, and he would give Seaton the bill.

In May 1984, he charged Seaton between $10 and $12 per hour plus material. On the day of the fire, May 6, 1984, he was taking the outside faucet off and putting a new one in. Seaton called him about a month before that date and said the faucet needed to be fixed because it leaked when it was turned on. Seaton did not provide him with any tools; he had his own. Seaton did not meet him at the residence; he just told Janowitz to fix the problem, whatever it was. He had a van which he used to transport his tools. He brought with him all types of plumbing tools, pipe wrenches, crescent wrenches, channel locks, propane torch, screwdrivers, fittings, brass fittings, copper pipe and copper connectors.

According to the excerpts of Seaton's deposition, he called Janowitz, who had installed a dishwasher in the residence while Seaton's daughter was living there the year before, and told him something was leaking. He asked Janowitz to go to the residence, check out the leak and fix it. Janowitz installed the dishwasher on his own. He got Janowitz' name out of an ad in the local Cary paper for him to do some work at Seaton's own residence. He first met Janowitz in 1978 or 1979. Janowitz had his own home repair business at that time under the business name "R & A." Janowitz worked out of his own home in Cary, and he had a partner whose first name was Anthony.

As to special skill or expertise with regard to home repair, Seaton said he thought Janowitz was a "jack-of-all-trades" since the work Janowitz did for him was in the carpentry and plumbing area, but Janowitz also helped move furniture, and he installed aluminum windows in Seaton's basement. Janowitz did some work at Bright Oaks prior to the Hubers moving in; he installed the dishwasher and replaced a faucet in the kitchen sink.

Seaton stated he never received from Janowitz any kind of brochure or written document which set forth his qualifications or skill or background, and Janowitz had not been referred to him by anyone else. Janowitz gave him a written estimate for the work on the basement storm windows, but arrangements for other work was oral. As to whether Janowitz was bonded or insured, Seaton stated Janowitz did make some reference to it when he first began doing work for

him; Seaton did not recall whether Janowitz offered the information that he was insured, or whether he inquired of him as to that fact. Seaton did not know any of the details of the type of insurance Janowitz had.

At the time of the occurrence in May 1984, Janowitz was no longer in business with Anthony, although Anthony worked with Janowitz part-time on occasion. Seaton believed that Janowitz was employed by someone else and that he was now doing the home repair work part-time. He did not know by whom Janowitz was employed or the nature of the work he did.

To Seaton's knowledge, Janowitz had not gone to inspect the premises in connection with this particular repair job prior to the day he began work and the fire occurred. Seaton did not think anyone else was working with Janowitz at the time, and Seaton did not go out to the premises with Janowitz. Seaton suggested to Janowitz that he call Mrs. Huber to see when it would be convenient to come check the leak, and to his knowledge Janowitz did do that. Sunday morning was agreed on. He believed Janowitz used the torch to loosen the pipe, but he did not know exactly how Janowitz went about the work because he (Seaton) could not do those things himself and that is why he called in a professional.

The Hubers filed a response to Seaton's motion for summary judgment which purported to set forth the facts of the occurrence, along with their argument against summary judgment and an uncertified copy of a case investigation report from the arson investigation division of the office of the State Fire Marshall.

As was also their position in that response, plaintiffs contend here the court erred in granting summary judgment for Seaton because he was not only the owner of the property but also plaintiffs' landlord and, therefore, was responsible to them for the negligence of the independent contractor, Janowitz, in performing repair of the leased premises. It is undisputed that Seaton hired Janowitz to make the necessary repair to the leased premises. As such, plaintiffs assert, Seaton voluntarily assumed the duty to see that the repairs were made in a nonnegligent manner.

The general rule regarding responsibility for the negligent acts of an independent contractor was succinctly set forth in *Gomien v. Wear-Ever Aluminum, Inc.* (1971), 50 Ill. 2d 19, 21:

"Generally, it is the law that a master is liable for the acts of his servant committed within the scope of his employment; that a principal is liable for the acts of his agent performed within the scope of the agency; but neither is liable for the acts of an

independent contractor unless the act or omission causing harm was pursuant to the order or direction of the principal or employer, or unless under certain circumstances, the principal or employer failed to exercise reasonable care in selecting a careful and competent contractor."

Cases cited by plaintiffs in support of their position that a different rule should apply because Seaton was their landlord are not persuasive. In *Jordan v. Savage* (1967), 88 Ill. App. 2d 251, it was the landlord himself who made the repair, and in *Roesler v. Liberty National Bank* (1954), 2 Ill. App. 2d 54, it was the landlord's agent who made the repair. Neither case involved an independent contractor as in the case at bar.

We find plaintiffs' further argument does have merit, however. They correctly point out that liability can arise from negligence in the performance of a voluntary undertaking (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74) in that, having chosen to act, the actor is subject to the duty of acting carefully. (*Jordan*, 88 Ill. App. 2d at 262-63.) Plaintiffs' lease with Seaton is not a part of the record here; however, it is undisputed that Seaton undertook to have the repair made to the plaintiffs' residence. Although generally not liable for the negligence of an independent contractor, as noted above in the quote from the *Gomien* case (50 Ill. 2d at 21), there are exceptions to the general rule which insulates an employer from liability for the acts of an independent contractor. One of those exceptions provides that Seaton could be held liable to plaintiffs if he failed to exercise reasonable care in his selection of Janowitz as the independent contractor. (*Kouba v. East Joliet Bank* (1985), 135 Ill. App. 3d 264, 267.) The degree of care which an owner should exercise in selecting an independent contractor is that which a reasonable man would exercise under the circumstances of each individual case. (*Tansey v. Robinson* (1960), 24 Ill. App. 2d 227, 236.) Unlike the cause in *Kouba*, however, where the plaintiffs did not allege that the defendant was negligent in hiring the independent contractor/truck repossessors (135 Ill. App. 3d at 267), plaintiffs here did allege that Seaton "[c]arelessly and negligently hired Richard Janowitz to perform plumbing services on the premises in question when he knew, or in the exercise of ordinary care, should have known that Richard Janowitz did not have the experience, competence and knowledge to perform plumbing services in a safe and workmanlike manner." Seaton denied this allegation in his answer. Thus, plaintiffs contend the question of whether Seaton breached his duty of reasonable care in the selection of Janowitz as an independent contractor remains a disputed issue of material fact

which should have prevented the entry of summary judgment in Seaton's favor. We agree.

▪▪ ▪ "A motion for summary judgment is properly granted if the pleadings, depositions and admissions on file, together with any affidavits and exhibits, when construed strictly against the moving party and liberally in favor of the opponent [citation] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citation.]" (*Tsourmas v. Dineff* (1987), 161 Ill. App. 3d 897, 900.) A court of review will reverse an order granting summary judgment if it finds that a material question of fact is presented and that the moving party is not entitled to judgment as a matter of law. (*Tsourmas*, 161 Ill. App. 3d at 900.) A fact is material to the claim in issue when the success of the claim is dependent upon the existence of that fact. *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 88.

▪▪ In a negligent hiring case, the character of the employee for competency and skill is at issue and may be proved by incidents and reputation. (*Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 183; *Feigl v. Terminal R.R. Association* (1975), 30 Ill. App. 3d 55, 59.) The care exercised by a party—here the care exercised by Seaton in selecting Janowitz as the independent contractor—is a question of fact for the trier of fact. *Agnello v. Puzzo* (1982), 110 Ill. App. 3d 913.

Seaton makes no argument in response to plaintiffs' contention that this disputed issue of material fact exists. Further, although Seaton's "Statement of Facts" contains the assertion Janowitz was "a plumber," the deposition excerpts supporting Seaton's summary judgment motion do not bear this out where Janowitz did not so testify and where Seaton described Janowitz as a "jack-of-all-trades." In Illinois, "a plumber" is defined by statute as "any licensed person authorized to perform plumbing." Ill. Rev. Stat. 1985, ch. 111, par. 1102(6).

▪▪ Because the pleadings and excerpts from depositions on file—construed strictly against Seaton and liberally in favor of the plaintiffs—show there is a genuine issue of material fact, the court's summary judgment must be reversed and the cause remanded for further proceedings.

▪▪ ▪ Plaintiffs' final contention is that "[i]n light of Janowitz's denial of liability, Res Ipsa Loquitur should be a question of fact for the jury." We are unable to find in the record any such denial by Janowitz by way of answer or other pleading filed by him, save for reference to such fact in plaintiffs' own response to the summary judgment motion. Moreover, *res ipsa loquitur* is not a separate theory

of recovery or "question of fact" as plaintiffs so term it. It is a rule of evidence which allows an inference or presumption of negligence to be raised by circumstantial evidence. (*Dyback v. Weber* (1986), 114 Ill. 2d 232, 238; *Prado v. Evanston Hospital* (1979), 72 Ill. App. 3d 622, 625.) When *res ipsa loquitur* is invoked, the plaintiff bears the burden of proof of all of its elements, to wit: an occurrence which is one that ordinarily does not occur in the absence of negligence and that the defendant had exclusive control of the instrumentality that caused the injury. (*Dyback*, 114 Ill. 2d at 242.) Moreover, application of the doctrine of *res ipsa loquitur* in a given case is a question of law which must be decided in the first instance by the trial court. *Imig v. Beck* (1986), 115 Ill. 2d 18.

Based on the excerpts from Seaton's and Janowitz' depositions, it is clear that Seaton was neither in the residence on the day of the occurrence, nor did he "have control" of either the alleged ignited propane torch or Janowitz' method or manner in using it. Thus, plaintiffs have not borne the burden of showing the applicability of the doctrine to the instant cause. *Cf. Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 177-78 (directed verdict for defendant on plaintiffs' *res ipsa loquitur* counts upheld where plaintiffs had as much knowledge of the facts leading to the fire, and as great an ability to discover facts, as did the defendant, who was not in the building at all on the day of the fire).

For the reasons expressed above, the judgment of the circuit court of McHenry County is reversed, and the cause is remanded for further proceedings.

Judgment reversed and cause remanded.

LINDBERG, P.J., and INGLIS, J., concur.