JUSTINE WEISBLATT, Plaintiff-Appellant, v. CHICAGO BAR ASSOCIATION, Defendant-Appellee.

First District (3rd Division)   No. 1—96—4461

Opinion filed September 3, 1997.

50

Donald L. Johnson, of Chicago, for appellant.

McDermott, Will & Emery, of Chicago (Steven F. Pflaum and Catherine S. Mathews, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Justine Weisblatt, appeals from the dismissal of her complaint against defendant, the Chicago Bar Association (the CBA), and from the trial court's denial of leave to file an amended complaint. In both complaints, the plaintiff alleged that the Chicago Bar Association was liable for the negligent referral that its lawyer referral service made to her.

The CBA moved to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)), arguing that the complaint failed to state a cause of action. In her response to that motion, the plaintiff asserted two theories of liability. The plaintiff argued that the CBA was liable to the plaintiff for its negligent referral under the voluntary undertaking doctrine and as a "referring lawyer" under Rule 1.5(f) and (g) of the Illinois Rules of Professional Conduct (134 Ill. 2d Rs. 1.5(f), (g)). In granting the motion to dismiss, the trial court found that the plaintiff could not plead damages against the CBA since her malpractice action against the attorney to whom she had been referred was pending; that the CBA had no duty to insure that lawyers who participate in its referral service have adequate malpractice insurance; that no precedent existed for a cause of action against the CBA for voluntary undertaking; and that the plaintiff's claim was barred by the economic loss doctrine

stated in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982).

The plaintiff filed a motion to reconsider and for leave to file an amended complaint which explicitly raised the two theories of recovery alleged in plaintiff's response to the CBA's motion to dismiss, namely, negligent referral under the voluntary undertaking doctrine and negligent referral in failing to comply with the duties of a "referring lawyer" under the Rules of Professional Conduct. In that pleading, the plaintiff also alleged that her malpractice lawsuit against M.S., which sought in excess of $1 million, had been settled for $167,000, the maximum amount available under his malpractice insurance policy. The trial court denied plaintiff's motion to reconsider and for leave to file her amended complaint, and the plaintiff filed her notice of appeal.

The plaintiff raises the following issues: (1) whether the trial court abused its discretion in denying plaintiff leave to file an amended complaint; (2) whether plaintiff's amended complaint stated a claim based upon the voluntary undertaking doctrine; (3) whether plaintiff's amended complaint stated a claim for legal malpractice based upon the Illinois Rules of Professional Conduct; and (4) whether the plaintiff's amended complaint stated a cause of action for negligent representation.

■ The decision to allow the filing of an amended complaint rests within the sound discretion of the trial court and will not be reversed absent a manifest abuse of discretion. *E.g., Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211, 1216 (1992); *Trans World Airlines, Inc. v. Martin Automatic, Inc.*, 215 Ill. App. 3d 622, 575 N.E.2d 592 (1991). Four factors have been established to determine whether the trial court has abused its discretion. They are: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 660 N.E.2d 875 (1995); *Marczak v. Drexel National Bank*, 186 Ill. App. 3d 640, 542 N.E.2d 787 (1989); *Kupianen v. Graham*, 107 Ill. App. 3d 373, 437 N.E.2d 774 (1982). Our disposition of the instant appeal turns on the first factor and whether the amended complaint stated a cause of action. See *City of Elgin*, 169 Ill. 2d 53, 660 N.E.2d 875; *Caballero v. Rockford Punch Press & Manufacturing Co.*, 244 Ill. App. 3d 333, 614 N.E.2d 362 (1993); *Bernstein v. Lind-Waldock & Co.*, 153 Ill. App. 3d 108, 505 N.E.2d 1114 (1987) (it is appropriate for the trial court to deny leave to amend

when no cause of action can be stated). See also *Marczak*, 186 Ill. App. 3d at 643, 542 N.E.2d at 789 ("[t]he court may consider the ultimate efficacy of a claim in passing on a motion to amend a pleading and may deny leave if the proposed amendment does not cure the defect").

## I. Voluntary Undertaking

In count I of her amended complaint,[1] the plaintiff alleged that the CBA provided an attorney referral service from which members of the public could obtain the names of attorneys with purported expertise in specified areas of the law. She alleged that the attorney participants were required to demonstrate to the CBA expertise and adequate malpractice insurance. The plaintiff further alleged that she telephoned the CBA lawyer referral service seeking the name of a lawyer who specialized in legal malpractice. The plaintiff alleged that the lawyer referral service gave her the name of M.S. and told her that he specialized in legal malpractice matters. The plaintiff alleged that the CBA owed a duty of reasonable care to see that attorneys who participated in the lawyer referral service possessed expertise and that they had adequate malpractice insurance. The plaintiff alleged that the CBA was negligent and breached that duty of care because M.S. did not have expertise in the area of legal malpractice and did not have adequate malpractice insurance. In support of her allegation that M.S. did not have expertise in legal malpractice, the plaintiff alleged that M.S. negligently advised her to settle her fee dispute with her divorce attorney and caused her to release a collectible malpractice claim against that attorney worth in excess of $1 million. The plaintiff alleged that she suffered economic damages in that she was unable to pursue her malpractice claim against her divorce attorney and that M.S.'s malpractice insurance was inadequate to cover the loss she suffered as a result of her inability to sue her divorce attorney.

■ In reliance on *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 199 N.E.2d 769 (1964), and *Cross v. Wells Fargo Alarm Services*, 82

---

[1] Although plaintiff's notice of appeal states that appeal is taken from the order denying her motion to vacate the dismissal of her original complaint and denying her leave to file an amended complaint, we will not reach the issue of the sufficiency of plaintiff's original complaint. Plaintiff's arguments appear to be based upon the sufficiency of the amended complaint, and it is settled law that the filing of an amended pleading that is complete in and of itself and that does not refer to or adopt a prior pleading acts as an abandonment of the earlier pleading. See *Roy v. Coyne*, 259 Ill. App. 3d 269, 287, 630 N.E.2d 1024, 1036 (1994).

Ill. 2d 313, 412 N.E.2d 472 (1980), the plaintiff argues that she pled a cause of action for negligent performance of a voluntary undertaking. As espoused in *Nelson* and *Cross*, the voluntary undertaking doctrine imposes liability upon one who gratuitously undertakes to render services to another and who fails to perform those services with due care or with such competence and skill as he or she possessed. *Cross*, 82 Ill. 2d 313, 412 N.E.2d 472; *Nelson*, 31 Ill. 2d 69, 199 N.E.2d 769. See *Siklas v. Ecker Center for Mental Health, Inc.*, 248 Ill. App. 3d 124, 617 N.E.2d 507 (1993).

The CBA argues that the voluntary undertaking doctrine is inapplicable to the instant case because it only imposes liability for bodily injury or physical damage that results when the undertaking is negligently performed. The CBA argues that, since the plaintiff herein did not suffer any physical damage, she cannot allege a cause of action based upon the voluntary undertaking doctrine.

In Illinois, the voluntary undertaking doctrine generally has been applied to allow recovery where the injury has been of a bodily or physical nature. See, *e.g.*, *Nelson*, 31 Ill. 2d 69, 199 N.E.2d 769 (involving personal injuries and wrongful deaths); *Cross*, 82 Ill. 2d 313, 412 N.E.2d 472 (involving bodily injuries); *Huber v. Seaton*, 165 Ill. App. 3d 445, 519 N.E.2d 73 (1988) (involving property damage). Our court recently held that there can be no recovery under the voluntary undertaking doctrine unless physical injury or damage has occurred. See *Furtak v. Moffett*, 284 Ill. App. 3d 255, 671 N.E.2d 827 (1996). But see *Stefan v. State Farm Mutual Automobile Insurance Co.*, 284 Ill. App. 3d 727, 672 N.E.2d 1329 (1996) (applying voluntary undertaking doctrine to economic injury without discussion of that issue). See also *Northfield Insurance Co. v. St. Paul Surplus Lines Insurance Co.*, 545 N.W.2d 57 (Minn. Ct. App. 1996); *Southwestern Bell Telephone Co. v. Delanney*, 809 S.W.2d 493 (Tex. 1991) (stating that physical injury is required to obtain recovery under the voluntary undertaking doctrine). But see *Lloyd v. State Farm Mutual Automobile Insurance Co.*, 176 Ariz. 247, 860 P.2d 1300 (1992); *Chew v. Paul D. Meyer M.D., P.A.*, 72 Md. App. 132, 527 A.2d 828 (1987) (allowing economic loss recovery under voluntary undertaking claim). The Restatement (Second) of Torts also limits recovery under that doctrine to cases wherein physical injury has occurred. It states that "[o]ne who undertakes *** to render services to another *** is subject to liability to the other for *physical harm* resulting." (Emphasis added.) Restatement (Second) of Torts § 323, at 135 (1965).

■ Here, the plaintiff seeks economic loss recovery in tort based upon the breach of the duty imposed by the voluntary undertaking doctrine. She seeks to recover the damages she was unable to recover

against her divorce attorney, who allegedly failed to obtain a sufficient share of her marital estate. It would appear that Illinois and many other jurisdictions would limit recovery under the voluntary undertaking doctrine to bodily injury or physical damage, which is the context within which this doctrine developed.

Moreover, even if economic loss was not specifically excluded from recovery under the voluntary undertaking doctrine, it would be so excluded under the general maxim in tort recovery that provides that economic loss is not recoverable in tort. See *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 86, 435 N.E.2d 443 (1982) ("[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence"). See also *Collins v. Reynard*, 154 Ill. 2d 48, 52, 607 N.E.2d 1185 (1992) (Miller, C.J., specially concurring, joined by Bilandic, Freeman and Cunningham, JJ.) for extensive list of cases wherein *Moorman* doctrine applied to prohibit economic loss recovery in tort. The only exceptions to this prohibition are in the areas of fraudulent and negligent representations (*Moorman*, 91 Ill. 2d at 88-89, 435 N.E.2d at 452; *Rozny v. Marnul*, 43 Ill. 2d 54, 250 N.E.2d 656 (1969)) and professional malpractice (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503 (1994) (accountant malpractice); *Collins v. Reynard*, 154 Ill. 2d 48, 607 N.E.2d 1185 (1992) (legal malpractice)). As shall be more fully discussed below, plaintiff's amended complaint does not allege a cause of action that falls within any of these *Moorman* exceptions.

In the cases cited by the plaintiff wherein economic loss recovery was permitted for the negligent performance of a voluntary undertaking only one, *Chew v. Paul D. Meyer M.D., P.A.*, 72 Md. App. 132, 527 A.2d 828, is informative. In *Chew*, the plaintiff sought economic damages against the defendant doctor based upon the doctor's failure to timely complete plaintiff's insurance forms, the untimeliness of which caused plaintiff's job termination. The plaintiff alleged alternative theories of recovery, namely, breach of contract and negligent performance of a gratuitous undertaking. Finding that the voluntary undertaking count stated a cause of action, even though it sought economic loss recovery only, the court partially rejected the Restatement (Second) of Torts requirement for physical damage. That rejection was limited, however, to situations involving contractual undertakings, when an " 'intimate nexus *** by contractual privity or its equivalent' " exists between the parties. *Chew*, 72 Md. App. at 140, 527 A.2d at 831-32, citing *Jacques v. First National Bank*, 307 Md. 527, 534, 515 A.2d 756, 759-60 (1986).

*Chew* is not applicable to the instant case for several reasons.

First, as noted above, the *Moorman* economic loss doctrine, with certain exceptions not here applicable, prohibits economic loss recovery in tort in Illinois. Second, *Chew* diverges from the general rule on voluntary undertaking that limits liability to physical damage. Third, *Chew*'s divergence from that general rule was specifically limited to voluntary undertaking actions that alleged an "intimate nexus" or contractual relationship between the parties. In the instant case, the plaintiff has not alleged the existence of a contractual relationship. While there may have been a contractual relationship between the CBA and the referral service attorney participants, the relationship between the CBA and the plaintiff was strictly gratuitous and lacked contractual privity.

## II. Legal Malpractice

### A. Liability as a "Referring Lawyer"

■ The plaintiff next argues that her amended complaint falls within the recognized exception to the *Moorman* economic loss doctrine in that it alleges legal malpractice. In *Collins v. Reynard*, 154 Ill. 2d 48, 50, 607 N.E.2d 1185, 1186 (1992), our supreme court held that "a complaint against a lawyer for professional malpractice may be couched in either contract or tort." As later explained in *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503 (1994), the economic loss doctrine does not bar a tort action in the service industry where duties are not defined by contract but arise outside the contract. In *Touche Ross*, the court noted that "attorneys owe an extracontractual duty which arises not from contract, but from the traditional responsibilities a lawyer owes to a client." *Touche Ross*, 159 Ill. 2d at 162, 636 N.E.2d at 514, citing *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 318, 555 N.E.2d 346, 353 (1990).

Plaintiff's legal malpractice count does not allege negligence in the performance of duties arising from a contractual relationship between the CBA and herself. Rather, she alleges that the CBA was negligent in the performance of its duties as a "referring lawyer" set forth in Rules 1.5(f) and (g) of the Illinois Rules of Professional Conduct (134 Ill. 2d Rs. 1.5(f), (g)). Rule 1.5(f) prohibits a lawyer from dividing a fee for legal services with another lawyer who is not in the same firm, unless the client consents in writing to certain specified disclosures. 134 Ill. 2d R. 1.5(f). Rule 1.5(g) provides:

> "A division of fees shall be made in proportion to the services performed and responsibility assumed by each lawyer, except where the primary service performed by one lawyer is the referral of the client to another lawyer and

(1) the receiving lawyer discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit, and

(2) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer." 134 Ill. 2d R. 1.5(g).

In her amended complaint, the plaintiff alleged that the CBA lawyer referral service required lawyer participants to pay referral fees when individuals referred to them by the CBA retained them to provide legal services. The plaintiff alleged that, by requiring the attorney participants to pay a referral fee, the CBA acted as a "referring lawyer" under the Illinois Rules of Professional Conduct. The plaintiff further alleged that, as a "referring lawyer," the CBA owed the plaintiff the same duties for the performance of services as the receiving attorney.

The CBA argued in the trial court and continues to argue on appeal that the CBA is not a "lawyer" and is not subject to Rules 1.5(f) and (g) of the Rules of Professional Conduct. We agree. The mere receipt of a referral fee does not by itself make an entity an insurer or otherwise responsible for the conduct of the lawyer to whom the matter is referred. Only where the referring entity is a lawyer can such a responsibility be and is such a responsibility imposed under Rule 1.5.

Rule 1.5 expressly governs the division of fees and professional responsibilities between lawyers. The objective of that rule, as discussed in the committee commentary to Rule 2—107 of the Illinois Code of Professional Responsibility, the predecessor to Rule. 1.5, is to encourage referrals to experienced lawyers and to discourage the practice of creating "make-work" by the referring attorney for purposes of earning the referral fee. So long as the referring lawyer maintains responsibility for the work of the receiving lawyer, the referral fee is justified. In this regard, the committee commentary states:

"To require actual participation in a case before a fee may be earned discourages some lawyers from referring cases they know could be better handled by another. This is not in the interest of the client or the lawyer. Currently, referring lawyers are sometimes given make-work tasks after referral to 'earn' a fee. This practice does not encourage the efficient delivery of legal services and may drive up legal fees. The public is best served by encouraging lawyers to refer matters to those more skilled in a particular area by permitting them to earn a referral fee so long as there is full disclosure to the client and responsibility is

maintained by the referring lawyer." 107 Ill. 2d R. 2—107, Committee Commentary (rev. June 26, 1981).

Given this purpose, one can discern that Rule 1.5 and its predecessor, Rule 2—107, were intended to govern referrals made by lawyers and not those made by lawyer referral services.

The CBA is not a lawyer. The CBA is not licensed to practice law nor was it engaged by the plaintiff to represent her. The CBA is a not-for-profit organization that provides many services, including a lawyer referral service. The rule governing the receipt of referral fees by a nonlawyer referring entity, such as the CBA, is Rule 7.2(b). 134 Ill. 2d R. 7.2(b). That rule recognizes lawyer referral services and permits lawyers to "pay the usual charges of a not-for-profit lawyer referral service or other legal service organization."[2] 134 Ill. 2d R. 7.2(b). While that rule allows lawyer referral services to collect referral fees, it does not, however, impose any duty or responsibility upon the lawyer referral service or legal service organization to monitor or maintain responsibility for the legal services ultimately rendered by the lawyer receiving the referral. Thus, the mere taking of a referral fee as a referring agency under Rule 7.2(b) rather than as a referring lawyer under Rule 1.5 will not suffice to make the CBA an insurer or otherwise vicariously accountable for the actions of the attorney to whom the matter is referred.[3]

---

[2]In reliance on *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 651 N.E.2d 1132 (1995), the plaintiff argues that the CBA can be sued for legal malpractice even if it is not a lawyer. *Hermitage Corp.* lends no support for this contention. In that case, the defendants, who were not lawyers, were in the business of preparing and recording liens. The action brought against them was not for legal malpractice but for negligence and the unauthorized practice of law based upon defendants' improper preparation of a mechanic's lien.

[3]The plaintiff argues that there is no allegation in her complaint or evidence in the record to show that the fees received by the CBA were "usual charges of a not-for-profit lawyer referral service," as required by Rule 7.2(b) of the Rules of Professional Conduct. 134 Ill. 2d R. 7.2(b). The plaintiff is correct that her amended complaint only alleged that the CBA received "a portion of the fee that the *** attorney receives from the member of the public who has been referred to the panel attorney from the CBA." The amount of such a payment is not, however, of consequence to the issue herein, that is, whether the Illinois Rules of Professional Conduct impose a duty upon the CBA to maintain responsibility over the referred case. As noted in the text of the opinion, the rules do not impose such a duty upon lawyer referral services.

## B. Negligent Representation

■ The plaintiff finally urges, albeit in her reply brief, that her amended complaint sufficiently alleges another *Moorman* exception, negligent representation. Since a motion to dismiss should not be granted if a good cause of action is stated in the factual pleadings, even if that cause of action is asserted for the first time on appeal (*Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300, 655 N.E.2d 1162 (1995)), we will address plaintiff's negligent misrepresentation contention.

■ Citing to *Rozny v. Marnul*, 43 Ill. 2d 54, 250 N.E.2d 656 (1969), the *Moorman* court stated that economic loss is recoverable where one who is in the business of supplying information for the guidance of others in their business transactions negligently supplies false information. *Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443. In order to maintain an action for negligent representation, a plaintiff must allege: (a) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by defendant; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; (5) damage to the other party resulting from such reliance; and (6) duty owed by defendant to plaintiff to communicate accurate information. *Rosenstein v. Standard & Poor's Corp.*, 264 Ill. App. 3d 818, 636 N.E.2d 665 (1993). See generally Restatement (Second) of Torts § 552 (1977).

The relevant allegations in the plaintiff's amended complaint state that the CBA "provide[s] an attorney referral service by which members of the public may obtain from this service the names of attorneys with purported expertise in specified areas of law"; that the CBA told the plaintiff that M.S. specialized in legal malpractice matters; that the CBA told the plaintiff to call the CBA back "if it '[did] not work out with him' '"; that M.S. breached his duties to the plaintiff with respect to his representation of the plaintiff in her claim against her divorce attorney; and that, "[b]ut for the negligence of the CBA in referring plaintiff to M.S. as a legal malpractice specialist," plaintiff would have been able to bring a lawsuit against her divorce attorney. These allegations do not sufficiently allege a cause of action against the CBA for negligent representation.

■ Arguably, by making the referral, the CBA was engaged in the business of providing information, albeit as a not-for-profit organization. However, the plaintiff has not alleged that the information provided to her by the CBA was false. The plaintiff did not allege that M.S. had no expertise in the legal malpractice field or that he was incompetent with respect to any other legal malpractice matters he had handled. She only alleged that M.S. mishandled her legal

malpractice claim. That single occurrence would not establish a lack of expertise or experience so as to make the CBA's representation false. To hold otherwise would transform the CBA into a guarantor of the attorneys who participate in its lawyer referral service. By representing that an attorney has expertise in a given area of the law, the CBA was merely stating that the attorney had practiced in that area and was familiar with the law. That fact is not negated when one alleges a single occurrence in which the attorney erred.[4]

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and LEAVITT, J., concur.

---

[4]Arguably, the CBA could contend that it did not intend to induce the plaintiff to hire M.S. based upon the fact, attested to by the plaintiff, that it told the plaintiff to call the CBA back "if it '[did] not work out with him.'" However, this argument would best be left for the trier of fact rather than for disposition on a pleadings motion.