ARMAND A. GONZALZLES, Plaintiff-Appellant, v. AMERICAN EXPRESS CREDIT CORPORATION *et al.*, Defendants-Appellees (Robert S. Levy *et al.*, Defendants).

First District (3rd Division)   No. 1—98—3888

Opinion filed June 28, 2000.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Sara E. Cook, and Kristin L. Dvorsky, of counsel), for appellant.

Peter J. Borzeka & Associates, of Chicago (Peter J. Borzeka, of counsel), for appellees.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Armand Gonzalzles, M.D., appeals from an order of the circuit court dismissing counts VI through XVI of his sixth amended complaint, with prejudice, pursuant to defendants American Express Credit Corp.'s (American Express), Montgomery Ward Enterprises, Inc.'s (Montgomery Ward), and Signature Agency, Inc.'s (Signature) section 2—615 motion to dismiss (735 ILCS 5/2—615 (West 1998)). On appeal, plaintiff contends that the trial court erred in dismissing the counts against defendants because he sufficiently pled causes of action against defendants for breach of contract, negligent referral, breach of fiduciary relationship, unauthorized practice of law, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 1996)) based on defendants' referral of attorney Robert S. Levy and the Chicago law firm of Robert S. Levy & Associates (Levy)[1] to him pursuant to a legal services referral plan. For the reasons set forth below, we affirm.

On July 22, 1991, plaintiff entered into a "contract" (legal services plan or plan) with American Express whereby American Express agreed to provide plaintiff with legal representation in exchange for a monthly fee from plaintiff.[2] Plaintiff signed a membership form to

---

[1]Levy is not a party to this appeal.

[2]Attached as an exhibit to plaintiff's sixth amended complaint was an affidavit from plaintiff indicating that he did not possess a copy of an "executed contract for services."

become a participant in the plan. Plaintiff received a return letter from the vice president of the plan which stated, in pertinent part:

> "Our goal for this plan is to provide members, like you, with quality legal representation for a reasonable fee. And, in our constant efforts to provide you with this highly professional service, we have provided you with another law firm to meet your specific legal needs."

The letter also included a membership card informing plaintiff that his legal representation under the plan would be provided by Levy.

The plan was administered by Signature. Plaintiff's benefits in the plan were more fully set out in the "Confidential Benefit Handbook" (handbook).[3] The handbook instructed participants on how to use the legal services detailed in the plan. When calling their plan attorney, participants were asked to

> "be prepared to say, in general terms, what the nature of your request or problem is so that you will be referred to the appropriate attorney in that law firm who handles that area of law."

The handbook explained that attorneys were chosen for participants based on geographic location. The handbook described the qualifications of its plan attorneys, stating:

> "All plan attorneys are licensed to practice in your state. They are registered with the State Bar Association or appropriate regulatory agency and proper references have been checked. All are experienced and in private practice. Plan attorneys have their own offices and are not employees of the Plan."

The handbook also contained a section on "Limitation of Liability" which explained the following:

> "The State Bar does not guarantee the quantity or quality of legal services provided under this plan. Total responsibility for delivery of services rests with the Plan and the Plan Attorneys in their individual attorney-client relationships. Plan Members may at any time file a complaint with the State Bar or other attorney regulatory authority concerning a problem with an attorney's professional conduct."

From July 22, 1991, to February 17, 1994, plaintiff paid all of his fixed monthly fees to American Express as required by the plan.

On June 26, 1996, plaintiff filed an eight-count complaint against Levy, American Express, Montgomery Ward, and Signature. Counts I through III of the complaint were directed against Levy for legal malpractice, breach of fiduciary duty, and breach of contract, respectively. Plaintiff alleged that he retained Levy in 1991 to represent him in a breach of warranty action against a company from which he had

---

[3]Plaintiff attached the handbook as an exhibit to his sixth amended complaint.

purchased a boat and that Levy failed to file an action against the company within the appropriate statute of limitations period. Plaintiff also claimed that he retained Levy to represent him in a dissolution of marriage proceeding, but Levy failed to file a motion to modify his spousal support payments and to notify plaintiff that a judgment had been entered against him for unpaid support payments, thereby causing him damages.

Counts IV through VIII of the complaint were directed against American Express, Montgomery Ward, and Signature. Count IV was a claim for negligent referral. Plaintiff alleged that defendants "held themselves out as providers of legal services" and that despite their duty to provide "competent legal representation," defendants breached this duty, injuring plaintiff "in an undetermined amount." Counts V and VI were claims for breach of fiduciary duty and breach of contract, respectively, and contained similar allegations against defendants for failing to provide plaintiff with "competent" legal representation. Count VII of the complaint was a claim for the unauthorized practice of law by defendants. Plaintiff alleged that defendants had received compensation for "providing the legal services of [Levy] to [plaintiff]" in violation of the Illinois Corporation Practice of Law Prohibition Act (705 ILCS 220/1 (West 1996)). Count VIII was a claim for defendants' violation of the Consumer Fraud Act.

Plaintiff filed first and second amended complaints naming additional defendants but did not make any substantive changes in the allegations made in his initial complaint. Plaintiff filed a third amended complaint, which only amended the counts directed against Levy in response to a motion to dismiss filed by Levy. On June 16, 1997, the trial court entered a default judgment in favor of plaintiff and against Levy in the amount of $235,555.59 plus costs based on Levy's failure to respond to plaintiff's third amended complaint.

Plaintiff also filed fourth and fifth amended complaints in response to defendants' additional motions to dismiss, which were based upon, among other reasons, plaintiff's failure to attach to his complaint a copy of the contract between the parties.

On April 17, 1998, plaintiff filed a sixth amended complaint. Counts VI through XVI were directed against defendants. The complaint alleged the same causes of action as plaintiff's prior complaints but divided the causes of action against American Express, Montgomery Ward and Signature into separate counts. Plaintiff also added a "third-party beneficiary breach of contract" claim (count VII) against Montgomery Ward and Signature based on their agreement with American Express to provide legal representation to participants in American Express' plan and Signature's administration of the plan.

All of the causes of action in the sixth amended complaint were again based on defendants' alleged failure to provide "quality legal representation" for plaintiff's "specific legal needs." Similar to the prior complaints, the sixth amended complaint contained counts for breach of contract, breach of fiduciary duty, negligent referral, unauthorized practice of law, and violation of the Consumer Fraud Act.

On June 9, 1998, defendants filed a section 2—615 motion to dismiss counts VI through XVI of plaintiff's sixth amended complaint (hereinafter referred to as the complaint). With respect to plaintiff's "breach of contract" claims (counts VI through VIII), defendants argued that the legal services plan "[made] it clear that the plan removed [d]efendants from any responsibility for the legal services delivered by the receiving attorney [Levy]." Defendants further argued that *Weisblatt v. Chicago Bar Ass'n*, 292 Ill. App. 3d 48, 648 N.E.2d 984 (1997), held that a legal referral service was not absolutely liable for the negligence of the attorney providing the legal services through the plan. With respect to the dismissal of plaintiff's claims for "negligent referral" (counts IX and X), defendants relied on a provision in the handbook that stated that defendants were not responsible for, or involved in, "the attorney-client relationship between the plan member and the receiving attorney." Defendants claimed that the plan was not a lawyer, and they did not have a duty or responsibility to monitor the services of the referred attorney. Defendants also argued that they had confirmed that Levy was a licensed attorney in good standing in Illinois in accordance with the provisions of the handbook.

With respect to plaintiff's claims for "breach of fiduciary duty" (counts XI and XII), defendants argued that the counts should be dismissed because plaintiff only pled conclusory allegations that a fiduciary relationship existed between defendants and plaintiff and failed to plead the *prima facie* elements of this cause of action. With respect to plaintiff's claims for the "unauthorized practice of law" (counts XIII and XIV), defendants again relied on *Weisblatt*, arguing that the acceptance of a referral fee did not make defendants the "guarantors of the legal service[s] delivered or not delivered by the Levy Defendants." Lastly, with respect to plaintiff's claims for violation of the Consumer Fraud Act (counts XV and XVI), defendants argued that there was no evidence to support plaintiff's allegation that defendants committed a deceptive act. Defendants further argued that plaintiff had admitted in the allegations of his fourth amended complaint that Levy was licensed to practice law in Illinois, thereby negating any suggestion that defendants committed a deceptive act in the referral of Levy.

In response, plaintiff, relying on *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 719 N.E.2d 756 (1999), argued that defendants were providing a "managed legal care plan via its legal services plan" similar to a health maintenance organization (HMO). Plaintiff further argued that the HMO in *Petrovich* was held potentially liable on many of the same legal theories upon which plaintiff based his cause of action against defendants and that there was no basis to distinguish *Petrovich* from the present case. Plaintiff also argued that the disclaimer in the handbook, that participating attorneys were not employees of the plan, created a genuine issue of material fact regarding the degree of defendants' control over Levy and did not eliminate their responsibility for Levy's negligent representation of plaintiff.

Plaintiff further argued that he properly pled the various causes of action included in his complaint. Plaintiff claimed that he adequately pled a cause of action for breach of contract by defendants based on his allegation that they did not provide the "quality legal representation" to serve his "specific legal needs" as defendants had promised. Plaintiff maintained that defendants' claim, that Levy was chosen based on his geographic location to plaintiff, supported his claim that defendants did not properly investigate Levy's competence and were negligent in their referral of him because he could not meet plaintiff's specific legal needs. Plaintiff further argued that he had "adequately pled the relationship between himself and Robert Levy [attorney-client] as well as the agency relationship between the Defendants and Robert Levy" and that these allegations sufficiently supported the existence of defendants' fiduciary duty to him to satisfy the pleading requirements for breach of that duty. Plaintiff also argued that he properly pled a cause of action for the unauthorized practice of law by defendants because he was only required to allege that defendants had violated the statute (705 ILCS 220/1 (West 1998)) prohibiting corporations from such practice. Plaintiff maintained that "defendants made certain representations concerning [their] legal abilities and what [they] could legally provide to the plaintiff and therefore [had] violated the statute." With respect to his claim for defendants' violation of the Consumer Fraud Act, plaintiff argued that he properly pled a deceptive act by defendants based on his allegation that they had failed to provide him with the quality legal service defendants promised him to meet his specific legal needs.

On September 21, 1998, the trial court entered an order dismissing, with prejudice, counts VI through XVI of plaintiff's complaint, finding that the facts alleged were legally insufficient to state the causes of action claimed in those counts. This appeal followed.

Plaintiff contends that he properly pled the elements for a cause of action based on breach of contract against defendants in counts VI through VIII of his complaint, arguing that defendants breached the contract by failing to provide "quality legal representation" to serve his "specific legal needs" as promised in the contract.

Defendants contend that the language in the contract, stating that the referral plan sought to provide "quality legal representation" to serve plaintiff's "specific legal needs," did not make them guarantors or absolute insurers regarding the quality of the legal service ultimately delivered under the plan. Defendants argue that the trial court properly found that the terms of the contract revealed an "unambiguous contractual purpose to refer a duly licensed attorney who will provide specified services at a fixed or reduced rate" and that they performed this duty.

■ A section 2—615 motion to dismiss a complaint challenges only the legal sufficiency of a complaint and alleges only defects on the face of the complaint. *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997). The critical inquiry in deciding a section 2—615 motion to dismiss is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vernon*, 179 Ill. 2d at 344, citing *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87, 672 N.E.2d 1207 (1996). A cause of action will not be dismissed on the pleadings unless it clearly appears that the plaintiff cannot prove any set of facts that will entitle it to relief. *Vernon*, 179 Ill. 2d at 344. In reviewing a trial court's ruling on a defendant's section 2—615 motion to dismiss, we apply a *de novo* standard of review. *Doe v. McKay*, 183 Ill. 2d 272, 274, 700 N.E.2d 1018 (1998). A reviewing court must take all well-pleaded facts in the challenged complaint as true. *Person v. Behnke*, 242 Ill. App. 3d 933, 935, 611 N.E.2d 1350 (1993).

■ To properly plead a cause of action for breach of contract, a plaintiff must allege the essential elements, which are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199, 721 N.E.2d 605 (1999). A defendant's failure to comply with a duty imposed by the contract gives rise to the breach. *Hickox v. Bell*, 195 Ill. App. 3d 976, 992, 552 N.E.2d 1133 (1990).

■ In the present case, the documents constituting the contract between the parties which have been attached to the pleadings do not define the term "quality." Additionally, the handbook merely states that the plan attorneys are licensed to practice in the participant's state and are registered with the state bar association or appropriate

regulatory agency. The language of the contract, as alleged by plaintiff and indicated in the documents attached to the complaint, therefore, amounts to a promise by defendants to furnish plaintiff with a licensed attorney at a specific price. Defendants did not make any other assertions regarding Levy's practice capabilities. Defendants only agreed to offer the name of a licensed attorney who would work at a specified rate. Plaintiff did not allege any facts suggesting that defendants, through their referral of Levy, breached this agreement. There are no allegations in the complaint that at the time of the referral Levy was not licensed as an attorney in Illinois or that any professional regulatory agency had investigated, reprimanded or suspended him for any reason, or that defendants were aware of any prior acts of negligence or malpractice by Levy. Plaintiff therefore failed to sufficiently plead a breach of contract claim, and we find that the trial court properly dismissed counts VI through VIII of his complaint.

■ Plaintiff next contends that he properly pled the necessary elements for the tort of negligent referral against defendants in counts IX and X. He argues that defendants, as operators of a "profit oriented legal services plan where premiums are collected monthly," are potentially liable for the referral of an attorney who was not competent or qualified to handle his legal claims or provide professional service. Plaintiff maintains that he did not receive the benefit of the representation he had "bargained for" under the plan. Defendants contend that nonlawyer entities are not responsible for the referral of a licensed attorney who commits malpractice and that "[t]he pleadings here do not warrant such a sweeping and far-reaching change in the law" as proposed by plaintiff.

We find *Weisblatt*, relied on by defendants, dispositive of this issue. In *Weisblatt*, the plaintiff contacted the defendant Chicago Bar Association's (CBA) Lawyer Referral Service seeking the name of a lawyer who specialized in legal malpractice cases. The plaintiff claimed that the CBA breached its duty of care to her because the attorney to whom she was referred did not have expertise in legal malpractice matters, resulting in her loss of a cause of action against her divorce attorney, and that the referred attorney did not have adequate malpractice insurance herself. The plaintiff also alleged that the CBA's Lawyer Referral Service was liable because it required lawyer participants to pay referral fees to the CBA when they were retained by individuals who had been referred to them by the CBA. The plaintiff's complaint sought damages from the CBA for negligent performance of a voluntary undertaking and legal malpractice as a "referring attorney."

The *Weisblatt* court affirmed the trial court's dismissal of the

plaintiff's complaint. With respect to the plaintiff's claim for legal malpractice against the CBA, the court stated: "The CBA is not a lawyer. The CBA is not licensed to practice law nor was it engaged by the plaintiff to represent her." 292 Ill. App. 3d at 57. Because the CBA was a not-for-profit organization providing, among other services, a legal referral service, the court applied Rule 7.2(b) of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 7.2(b)) to the CBA's acceptance of a referral fee, stating:

> "While that rule [Rule 7.2(b)] allows lawyer referral services to collect referral fees, it does not, however, impose any duty or responsibility upon the lawyer referral service or legal service organization to monitor or maintain responsibility for the legal services ultimately rendered by the lawyer receiving the referral. Thus, the mere taking of a referral fee as a referring agency under Rule 7.2(b) rather than as a referring lawyer under Rule 1.5 [of the Illinois Rules of Professional Conduct] will not suffice to make the CBA an insurer or otherwise vicariously accountable for the actions of the attorney to whom the matter is referred." *Weisblatt*, 292 Ill. App. 3d at 57.

In *Richards v. SSM Health Care, Inc.*, 311 Ill. App. 3d 560, 724 N.E.2d 975 (2000), this court relied on *Weisblatt* in finding that there was no requirement that a legal referral service "stand legally responsible" for the services provided by a referred attorney in order to enforce a fee remittal agreement between the service and the attorney. *Richards*, 311 Ill. App. 3d at 566.

Like the CBA in *Weisblatt*, defendants in the present case were not licensed as attorneys or retained by plaintiff to represent him in legal matters. Plaintiff has failed to present any authority in support of the proposition that a nonlawyer becomes the insurer of, or vicariously liable for, the actions of an attorney referred to a third party by a nonlawyer. In *Weisblatt*, even the receipt of a referral fee did not create a duty by the CBA to monitor the attorney it had referred to the plaintiff. In the present case, plaintiff did not even allege that a referral fee agreement existed between defendants and Levy, and plaintiff thus failed to plead any basis upon which to hold that defendants had a duty or responsibility to monitor Levy's representation of plaintiff following the referral.

Plaintiff attempts to distinguish *Weisblatt*, arguing that that decision was limited to not-for-profit, nonattorney referral services. However, as argued by defendants here, the holding in *Weisblatt* was not so limited. The rule at issue in *Weisblatt*, Rule 7.2(b) of the Illinois Rules of Professional Conduct, refers to " 'not-for-profit lawyer referral service *or other legal service organization.*' " (Emphasis added.)

*Weisblatt*, 292 Ill. App. 3d at 57, quoting 134 Ill. 2d R. 7.2(b). The reference to "other legal service organization" indicates that neither Rule 7.2(b) nor the holding in *Weisblatt* was limited to not-for-profit lawyer referral services. *Weisblatt*, 292 Ill. App. 3d at 57.

We briefly note that plaintiff's reliance on *Petrovich* is misplaced. In *Petrovich*, our supreme court held that an HMO may be held vicariously liable for the negligence of its independent contractor physicians under both the doctrines of apparent and implied authority. Although the defendant HMO in *Petrovich* offered evidence that it customarily supplied its members with information and documents indicating that participating physicians were independent contractors and not agents or employees of the HMO, the evidence did not show that the HMO ever actually provided the plaintiff with that information, creating an issue of fact as to the issue of apparent authority. The *Petrovich* court also held that the facts of the case created an issue of fact as to whether the physician's independent status was negated by the degree of the HMO's control or actual authority over the physician.

*Petrovich* is distinguishable because the plan handbook issued by defendants in the present case clearly states that the participating attorneys in the plan are independent contractors and not employees or agents of defendants. Unlike the plaintiff in *Petrovich*, plaintiff here does not dispute that he received the handbook, which was in fact attached as an exhibit to his complaint. Additionally, neither the allegations in plaintiff's complaint nor the supporting exhibits suggest that defendants either retained any control over the attorney-client relationship between Levy and plaintiff or attempted to control Levy's representation of plaintiff in any manner. Accordingly, we find that the trial court properly dismissed counts IX and X of plaintiff's complaint which were based on negligent referral claims.

Plaintiff next argues that he adequately pled a cause of action for a breach of a fiduciary duty by defendants. Plaintiff maintains that defendants do not have to be attorneys in order for the court to find that a fiduciary relationship existed between the parties. Plaintiff argues that when a relationship is that of an attorney-client or principal-agent, a fiduciary relationship arises as a matter of law and nothing further needs to be pled. Plaintiff further argues that the allegations in his complaint referring to the attorney-client relationship between himself and Levy and Levy's agency relationship with defendants satisfies the pleading requirements to state a cause of action for breach of a fiduciary duty. Plaintiff also argues that, at the very least, his allegations in his complaint raised a genuine issue of material fact regarding the existence of a fiduciary relationship between the parties.

Defendants contend that plaintiff failed to plead any facts indicating that a fiduciary relationship existed between the parties as a matter of law. They argue that plaintiff did not plead any facts that there was a "degree of kinship" or a "disparity in age, health or mental condition" that would have created a fiduciary relationship. Defendants maintain that no fiduciary relationship existed between them and plaintiff, but rather between plaintiff and Levy, plaintiff's attorney.

■ A fiduciary duty may arise as a matter of law from the existence of a particular relationship, such as an attorney-client or principal-agent relationship. *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 672, 682 N.E.2d 314 (1997). A fiduciary relationship and the attendant duties may also arise as the result of special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former. *Ransom*, 289 Ill. App. 3d at 672. When the relationship between the parties is not one that gives rise to a fiduciary relationship as a matter of law, the party asserting the existence of the relationship has the burden of establishing such by clear and convincing evidence. *Ransom*, 289 Ill. App. 3d at 672. The relevant factors in determining whether a fiduciary relationship exists include: the degree of kinship between the parties; the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the "servient" party entrusted the handling of its business affairs to the "dominant party" and placed trust and confidence in it. *Ransom*, 289 Ill. App. 3d at 673.

■ In the present case, plaintiff has failed to cite to any authority in support of his contention that he satisfied the pleading requirements for a cause of action based on a breach of fiduciary duty by merely alleging that Levy was his attorney and that Levy was an agent of defendants. Although plaintiff's allegations suggest the existence of a fiduciary relationship, as a matter of law, between Levy and himself, plaintiff's allegations are insufficient to suggest that a fiduciary relationship existed, as a matter of law, between himself and defendants, who were neither his attorney nor his principal.

Additionally, plaintiff's allegations in his complaint are insufficient to suggest that special circumstances between plaintiff and defendants created a fiduciary relationship between them. As argued by defendants, plaintiff did not allege a degree of kinship between the parties or a disparity in age, health or mental condition that would support a finding of a fiduciary relationship. See *Ransom*, 289 Ill. App. 3d at 673. Plaintiff, a licensed physician, has also failed to plead any disparity between his education and business knowledge and that of

defendants which might give rise to a fiduciary relationship. We find, therefore, that the trial court properly dismissed counts XI and XII of plaintiff's complaint.

Plaintiff next contends that he properly pled a cause of action for the unauthorized practice of law by defendants. Plaintiff argues that defendants violated the statute prohibiting the unauthorized practice of law by a corporation in "[furnishing] attorneys to render legal services and [making] various representations to its plan members regarding the types of cases which the plan attorneys were qualified to handle." Plaintiff maintains that the fact that defendants are not attorneys is not controlling on this issue because a claim based on the unauthorized practice of law presupposes that the defendants are not licensed attorneys. Without providing further explanation or argument, plaintiff contends that the language in the plan handbook, stating that the attorney-client relationship exists only between the referred attorney and the plan member, "raises more questions than [it] answers." Plaintiff also argues that the statute prohibiting the unauthorized practice of law does not have restrictive language supporting the trial court's finding that there was no private cause of action for the claims pled in counts XIII and XIV of plaintiff's complaint.

Defendants again emphasize that plaintiff only had an attorney-client relationship with Levy and that the plan handbook clearly states that the plan is not involved in any aspect of the delivery of legal services by the attorney to the client. Defendants also argue that the Illinois Supreme Court rules, "by negative inference, provide that group legal services may exist and operate in Illinois without necessarily engaging in the unauthorized practice of law." Defendants further maintain that Rule 7.2 of the Illinois Rules of Professional Conduct allows an attorney to pay "the usual charges of a not-for-profit lawyer referral service or other legal service organization."

■ Section 1 of the Illinois Corporation Practice of Law Prohibition Act (705 ILCS 220/1 (West 1998)) provides:

> "It shall be unlawful for a corporation to practice law *** or to hold itself out to the public as being entitled to practice law or to render or furnish legal services or advice or to furnish attorneys or counsel or to render legal services of any kind in actions or proceedings of any nature ***."

We find that the allegations pled in plaintiff's complaint do not state a cause of action against defendants for the unauthorized practice of law. Plaintiff has not provided any authority supporting his argument that the referral of an attorney at a certain price by a for-profit referral plan violates section 1 of the Corporation Practice of Law Prohibition Act or otherwise constitutes the unauthorized practice of law.

As we held in *Weisblatt*, nonattorney entities are permitted to receive a fee for referrals without becoming the insurers or guarantors of the legal services provided by the attorney.

Additionally, the relevant provisions of the contract incorporated into plaintiff's complaint state that defendants had no involvement in the legal services provided by the referred attorney, Levy, and that the referred attorney was an independent contractor with the plan and not an employee. Although plaintiff alleges that defendants made certain assertions regarding the quality of the attorney referred to him, as stated above, these assertions constitute nothing more than a promise to provide an attorney with a license. Additionally, plaintiff's complaint contains no allegations that defendants, in fact, performed or offered legal services. The trial court, therefore, properly dismissed plaintiff's counts based on the unauthorized practice of law.

Lastly, plaintiff contends that he properly pled a cause of action based on defendants' violation of the Consumer Fraud Act, by alleging that defendants would provide competent legal representation to plaintiff, defendants would provide plaintiff with highly professional service, and the referred attorney would be able to serve plaintiff's specific legal needs. He also argues that defendants' deception was compounded by the fact that they did not ascertain whether Levy would be competent to handle his legal needs.

Defendants respond that plaintiff failed to properly plead a deceptive practice on their part because their referral of Levy preceded his alleged malpractice in handling plaintiff's claims. Defendants argue that plaintiff has not alleged that they knew or should have known that Levy would fail to handle plaintiff's legal matters based on any prior acts of professional negligence or malpractice by Levy. Defendants also argue that plaintiff did not sufficiently allege that defendants intended that plaintiff would rely on their alleged deceptions. Defendants further maintain that allegations in the complaint referring to a fiduciary relationship between Levy and plaintiff, as attorney and client, indicate that plaintiff, in fact, had placed his trust in Levy rather than in them.

The elements for a cause of action based on a violation of the Consumer Fraud Act are: (1) a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the plaintiff, in fact, relied on the deception; and (4) the deception occurred in the course of conduct involving trade or commerce. *Smith v. Prime Cable*, 276 Ill. App. 3d 843, 856-57, 658 N.E.2d 1325 (1995).

As stated above, in their contract with plaintiff, defendants effectively promised only to provide a licensed attorney to plaintiff. There are no allegations in the complaint or in any of the attached

exhibits incorporated into the complaint indicating that defendants knew, or should have known, that Levy was incompetent to render legal services to plaintiff. There are no allegations that Levy did not have his license or was not in good standing at the time of the referral. Although plaintiff did plead that Levy was negligent in representing him following the referral, those allegations are not the equivalent of pleading facts indicating that defendants knew or should have known that Levy was ineffective. Plaintiff's allegations that defendants did not perform a sufficient background check on Levy before referring him are also insufficient to plead a deceptive act or practice by defendants. Because plaintiff failed to plead a *prima facie* case for violation of the Consumer Fraud Act against defendants, we find that the trial court properly dismissed counts XV and XVI of plaintiff's complaint.

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

CAHILL, P.J., and WOLFSON, J., concur.