Third Division

January 26, 2000

No. 1-99-0195

BARRY RICHARDS, and )  Appeal from the

EUNICE RICHARDS, his wife, )  Circuit Court of

                     )  Cook County. 

Plaintiffs,                 )

)

v. )  No. 95 L 3146   

) 

SSM HEALTH CARE, INC., d/b/a )

ST. FRANCIS HOSPITAL AND HEALTH CENTER, )                       

JOHN KALAMARIS, D.O., and ST. FRANCIS   )                  

IMMEDIATE CARE CENTER, )

 )

Defendants )

)

(BECKY LYNN DAHLGREN AND LAW OFFICES OF )

BECKY LYNN DAHLGREN, )

)

Appellants, )

)

          v.                            )

                                        )

WEST SUBURBAN BAR ASSOCIATION, )  Honorable

)  Jennifer Duncan-Brice,

Appellee). )  Judge Presiding.

 

JUSTICE WOLFSON delivered the opinion of the court:

Some people do not know where to find competent lawyers.  Others can find them, but cannot afford them when they do.  Making available to the public competent and affordable representation is a subject the legal profession has struggled with.  This case concerns a typical solution reached by bar associations around the country.  It also raises a serious ethical issue that is rarely addressed by courts of review.

The West Suburban Bar Association (WSBA) operates a nonprofit lawyer referral service (the Service).  Members of its lawyer referral panel are required to remit to the WSBA a portion of the fee earned for services to the referred client.  In this case, attorney Becky L. Dahlgren (Dahlgren) agreed in advance to remit a certain percentage of her earned fee to the WSBA.  When the case was completed, she refused to remit a percentage of the contingent fee she collected.  She contended in the trial court and argues on appeal that doing so would constitute improper fee-

splitting.  She raises an issue of first impression in the courts of this State.

The trial court decided against Dahlgren on her Petition to Adjudicate Lien.  We find the fee remittal agreement between Dahlgren and the WSBA was legally and ethically proper.  For that reason we agree with the trial court and we affirm.

FACTS

Our account of the underlying facts in this case is hampered by a sketchy record.  We are guided by the trial court's factual findings and uncontradicted assertions of fact in the various pleadings and documents filed in the trial court and made part of the record.

On October 13, 1993, the WSBA, through the Service, referred Barry and Eunice Richards to Dahlgren for a consultation regarding a possible medical malpractice action.  The Richards' paid the WSBA a $25 fee for that consultation.  After that first consultation, the Richards' retained Dahlgren to pursue their claim.  They agreed to pay Dahlgren her usual fee in these matters -- one third of the gross amount received in settlement or verdict. 

The record contains a document used by the Service when referrals are made.  One part of it is signed by Barry Richards and releases the WSBA and the Service from any liability in connection with the referral.  The bottom half of the document is addressed to the attorney who received the referral.  It contains four questions which were answered by Dahlgren:

"A. Did the client contact you?

 B. Was there a consultation with client?

 C. Did referral result in fee arrangement?

 D. Is the Total Fee under $500.00?"

Dahlgren answered "Yes," "Yes," "Yes - 1/3 contingency," and "No."

The referral form also includes words that are at the core of this controversy:

"3. If the referral resulted in a fee arrangement remit to the Lawyer Referral Service the following, upon closing the file: Up to and including $500.00--10%; $501 to $1,500--20%; $1,501 and over 25%. YOU MUST SUBMIT THE GOLD "LAWYER REFERRAL SERVICE STATISTICAL COPY" WITH YOUR REMITTANCE."

We note Dahlgren was no stranger to the Service.  Since 1979 she accepted about 182 referrals and paid referral fees based on the applicable graduated scale.  But whether this was the first time or the 183rd time does not affect our decision in this case.

On February 14, 1995, Dahlgren brought suit in the circuit court of Cook County on behalf of the Richards'.  On April 8, 1997, Dahlgren negotiated a structured settlement of the case.  Pursuant to that agreement, the cause of action was dismissed on May 14, 1997.  The present cash value of the settlement was $375,000, making Dahlgren's one-third contingency fee $125,000.  The Service then claimed it was entitled to 25% of Dahlgren's fee, or $31,250.

Dahlgren refused to pay the referral fee.  Instead, she filed a Petition to Adjudicate Lien.  In that petition, and here, she claims the fee agreement with the Service was void and unenforceable.  She bases her position on the Illinois Supreme Court Rules of Professional Conduct (RPC) that prohibit certain kinds of fee-splitting among lawyers and the sharing of fees by a lawyer with a nonlawyer in most instances.  She also contends the charge of 25% of the contingent fee was excessive and unreasonable.

On April 6, 1998, the circuit court ruled in Dahlgren's favor, finding the agreement between Dahlgren and the Service unenforceable because it was harmful to the public interest.  However, after reconsideration, the trial court issued a new order on December 10, 1998, vacating the April 6, 1998, order and entering judgment in favor of the WSBA.  Dahlgren was ordered to remit $31,250 to the Service.  She now appeals from the December 10, 1998, order.

DECISION

First, we must determine which rule in the RPC applies to this case.  Dahlgren contends the letter and policy of Rules 1.5(f) and (g) which prohibit certain fee-sharing arrangements between lawyers, or of Rule 5.4(a), which prohibits lawyers from sharing legal fees with nonlawyers, apply.  See 134 Ill. 2d Rs. 1.5(f), (g), and 5.4(a).  Either way, she says, the referral agreement cannot be enforced.

The WSBA and the Chicago Bar Association, as 
amicus curiae
, maintain Rule 7.2(b), with its specific reference to "a not-for-

profit lawyer referral service," requires enforcement of the referral agreement.

We set out the relevant portions of the rules relied on by the parties:

Rule 1.5(f):

"*** a lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm, unless the client consents to employment of the other lawyer by signing a writing which discloses:

(1) that a division of fees will be made;

(2) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division; and

(3) the responsibility to be assumed by the other lawyer for the performance of the legal services in question."

Rule 1.5(g):

"A division of fees shall be made in proportion to the services performed and responsibility assumed by each lawyer, except where the primary service performed by one lawyer is the referral of the client to another lawyer and

(1) the receiving lawyer discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit, and

(2) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer."

Rule 5.4(a):

"A lawyer or law firm shall not share legal fees with a nonlawyer, except that *** [no applicable exception]"

Rule 7.2 (b):

"A lawyer shall not give anything of value to a person for recommending or having recommended the lawyer's services, except that a lawyer *** may pay the usual charges of a not-for-profit lawyer referral service or other legal service organization."

Rule 1.5 centers on the interests of the client, reflecting "the long-standing public policy of this state."  
Albert Brooks Friedman, Ltd. v. Malevitis
, 304 Ill. App. 3d 979, 985, 710 N.E.2d 843 (1999).  That is, "The Rule's historical antecedents demonstrate that the client's rights rather than the lawyer's remedies have always been this state's greatest concern."  
Albert Brooks Friedman, Ltd.
, 304 Ill. App. 3d at 985.

Requiring written client consent to the referral arrangement after full disclosure is designed to protect the client.  
Albert Brooks Friedman, Ltd.
, 304 Ill. App. 3d at 985-86.  So is the requirement that the referring lawyer assume legal responsibility for the performance of services.  
Elane v. St. Bernard Hospital
, 284 Ill. App. 3d 865, 672 N.E.2d 820 (1996).

Contracts between lawyers that violate Rule 1.5 are against public policy and cannot be enforced.  
Holstein v. Grossman
, 246 Ill. App. 3d 719, 616 N.E.2d 1224 (1993)(intra-attorney fee-

sharing agreement based primarily on client referral unenforceable as a matter of public policy where client did not agree to arrangement in writing).  Here, where attorney conduct is at issue, we look to the Supreme Court Rules for expressions of public policy.  
Marvin N. Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.
, 107 Ill. App. 3d 442, 447, 437 N.E.2d 900 (1982).

The ethical concerns reflected in Rule 1.5 and its predecessor, Disciplinary Rule 2-107 (Illinois Code of Professional Responsibility, effective July 1, 1980), are real, not trivial.  The rule ensures the "client's right to representation of her choosing ***."  
Albert Brooks Friedman
, 304 Ill. App. 3d at 984.  Even where a referral fee to a lawyer is authorized, "the total fee shall be reasonable."  RPC 1.5(h).

Experience informs us of potential undesirable byproducts of lawyer fee-sharing: stirring up litigation, improper methods of solicitation, unauthorized practice of law, excessive fees, referrals to incompetent lawyers, and unethical litigation practices.  See American Bar Association Formal Opinion 93-374 (1993)(not ethically improper for a lawyer who undertakes 
pro bono
 litigation to agree in advance to share court-awarded fees with the referring non-profit organization).

Rule 1.5 does not require actual participation in the case by the referring lawyer.  It does require the referring lawyer to be legally responsible for the performance of services to the client.  Rule 1.5(g)(2).  In that way, lawyers are encouraged to refer matters to those more skilled in a particular area, earning a referral fee while under no burden to create make-work tasks.  See Committee Comments to former R. 2-107, 107 Ill. 2d at 625.

In this case, Dahlgren agrees, as she must, that her clients were informed in writing of the Service's fee referral agreement with her.  By signing the form, Barry Richards consented to the arrangement.

But, contends Dahlgren, the Service did not agree to assume legal responsibility for her performance of services, as required by Rule 1.5(g)(2).  We conclude the referral that took place here is not a lawyer-to-lawyer referral described by Rule 1.5.  Nor is it a sharing of fees with a nonlawyer prohibited by Rule 5.4(a).  Referrals by a not-for-profit lawyer referral service are expressly covered by Rule 7.2(b)(In return for the recommendation of services, "*** a lawyer may pay the usual charges of a not-

for-profit lawyer referral service ***").

The clear wording of the applicable rules supports these conclusions, as does our recent opinion, 
Weisblatt v. Chicago Bar Ass'n
, 292 Ill. App. 3d 48, 684 N.E.2d 984 (1997).

In 
Weisblatt
, the plaintiff in a legal malpractice action, relying on Rules 1.5(f) and (g), contended the Chicago Bar Association referral service could be held liable for a negligent referral.  We found Rule 7.2(b), not Rule 1.5, applied.  The CBA had no responsibility for the legal services rendered by the lawyer receiving the referral.  We said:

"Given the purpose, one can discern that Rule 1.5 and its predecessor Rule 2-107 were intended to govern referrals made by lawyers and not those made by lawyer referral services."  
Weisblatt
, 292 Ill. App. 3d at 57.

Because Rule 7.2(b) applies to this case, there was no requirement that the Service stand legally responsible for Dahlgren's legal services to the Richards'.  If the Supreme Court had intended any such requirement, it easily could have said so.  It did not.  Whether written client consent to the referral arrangement is required by Rule 7.2(b) is an issue we need not decide in this case.  There was written consent.

Weisblatt
 was not a referral fee case.  We still must decide whether the "usual charges" authorized by Rule 7.2(b) may be, in accord with the public policy contained throughout the RPC, 25% of Dahlgren's contingency fee.

No reported Illinois case has addressed this issue.  In fact, only one reviewing court in the country has addressed the issue -- 
Emmons, Williams, Mires & Leech v. State Bar
, 6 Cal. App. 3d 565, 86 Cal. Rptr. 367 (1970).

In 
Emmons
, a local bar association referred a medical malpractice claim to attorney Hertzer, a panel member of the association's lawyer referral program.  After the claim was settled, Hertzer claimed his agreement to pay a one-third forwarding fee to the association was void because it was improper fee-splitting under the state code.  The code did not contain a rule that resembled Rule 7.2(b) of our RPC.  The court upheld the agreement anyway.

Illegal agreement or not, said the court, it does not offend the public policy underlying the canons:

"The bar association seeks not individual profit but the fulfillment of public and professional objectives.  It has a legitimate, nonprofit interest in making legal services more readily available to the public.  When conducted within the framework conceived for such facilities, its reference service presents no risks of collision with the objectives of the canons on fee-splitting and lay interposition." 
Emmons
, 6 Cal. App. 3d at 574.

Emmons
 relied, at least in part, on American Bar Association Formal Opinion 291, published August 1, 1956.  See American Bar Association Opinions of the Committee on Professional Ethics, 1967 edition.  The committee had been asked:

"May the association require members of the panel to assist in the financing of the [Lawyer Referral Service], either by flat fee or by a sliding scale charge based on the fees derived by the panel members from the cases referred to them?"

The answer was:

"The financing of the plan should be under the control of the association setting it up.  Registrants may be required to contribute to the expense of operating it by a reasonable registration charge or by a percentage of fees collected by them.  The latter arrangement would not, in the opinion of the Committee, constitute a violation of Canon 34 [the existing fee-splitting prohibition]."

On October 8, 1968, Formal Opinion 291 was cited as controlling authority on the referral service fee-sharing issue in ABA Informal Opinion 1076.  See Informal Ethics Opinions, Vol. II, 867-1284.

In 1970, the ABA committee was asked whether specialized bar associations could establish lawyer referral services.  The committee referred the inquirers to Formal Opinion 291, suggesting they review the opinion and the principles it espoused.  ABA Informal Opinion 1139 (1970).

Since then, the ABA Standing Committee on Lawyer Referral and Information Service has firmly held to the view that "percentage fee funding is a widely accepted method of supporting lawyer referral programs."  Letter of Dennis Murphy, Chair, ABA Standing Committee on Lawyer Referral and Information Service, June 10, 1998.

ABA Formal Opinion 291 has been relied on by bar associations around the country.  In an Appendix to this opinion we have summarized several bar association opinions approving of the practice of percentage fee-sharing with referral service lawyers.  We have been unable to find any opinion that disapproves of the practice followed in this case.
(footnote: 1)
In most jurisdictions "*** the payment of a percentage of fees collected in particular cases to an approved lawyer referral service is considered permissible under fee-splitting rules."  ABA/BNA Lawyers Manual on Professional Conduct 41:804 (1990).  
As of 1986, at least forty state and local bar associations required attorneys to give their lawyer referral services a percentage of their fees.  American Bar Association Lawyer Referral and Information Service Committee, Reference Handbook, p.41-42 (1986).  There is little doubt that number has substantially increased in the past fourteen years.  In 1998 an ABA survey reflected the use of percentage referral fees by 117 local and state bar associations.  See "Profile 2000: Characteristics of Lawyer Referral and Information Service," ABA Standing Committee on Lawyer Referral and Information Service, p. 18 (1999).

We understand bar association opinions, formal or informal, are not binding precedent.  At the same time, when the first Illinois code was adopted the drafters used the ABA Model Code as the "principle guideline."  
Holstein v. Grossman
, 246 Ill. App. 3d at 727.  107 Ill. 2d Article VIII, Committee Commentary, at 604.  Before that, when there was no official code, our supreme court pointed to Chicago and Illinois State Bar Association Ethical Codes as "a safe guide for professional conduct and an attorney may be disciplined for not observing them."  
In re Kutner
, 78 Ill. 2d 157, 164, 399 N.E.2d 963 (1979).

This court has cited to informal opinions of the CBA Professional Responsibility Committee, not because they were precedential, but because we found the "analyses sound."  
Elane v. St. Bernard Hospital
, 284 Ill. App. 3d at 871.

It is apparent our RPC is based substantially on the ABA Model Rules.  Variances are pointed out.  For example, in the preamble to the RPC the supreme court explained why it was not adopting ABA Model Rule 6.1.  And see Comment to Rule 8.5 for another distinction.

Our Rule 7.2(b) became effective August 1, 1990.  It is almost identical to the then-existing ABA Model Rule 7.2(c), which went into effect in 1983, and provides:

"A lawyer shall not give anything of value to a person for recommending the lawyer's service except that a lawyer may

* * *

(2) pay the usual charges of a not-for-profit lawyer referral service or legal sevice organization***"

We conclude the public policy considerations reflected in RPC Rules 1.5 and 5.4 do not bar the percentage fee-sharing that took place in this case.  On the contrary, there are strong policy reasons to hold percentage fee-sharing without the assumption of legal responsibility by a non-profit referral service is a positive force.  People unfamiliar with the lawyer selection process can make informed decisions.  They can receive affordable services they did not know existed.  They can obtain critical information concerning legal issues that have impact on their lives.

In addition, referral services have a salutary effect on

bar associations, resulting in furtherance of the public interest.  A bar association is motivated to ensure the integrity and competency of the lawyers it refers.  There is less likelihood the public will perceive these referrals as the sale of a client.  In fact, improper solicitation (Rule 7.3) should be reduced.

None of the concerns expressed in the bar association opinions or in the letter and spirit of the RPC exists in this case.  Dahlgren's fee of one-third was the typical contingent fee in personal injury cases.  See Rule 1.5(a): "A lawyer's fee shall be reasonable."

Payment of the referral fee to the Service would not increase costs to the Richards'.  Whether the Service received 25% or any other amount paid to Dahlgren is of no moment to the Richards'.  We do note from our examination of the bar opinions that 25% is at the high end of acceptable percentage referral fees.

Dahlgren apparently represented the Richards with competence.  See Rule 1.1: "A lawyer shall provide competent representation to a client."  And, of utmost importance, there is every indication Dahlgren used independent professional judgment on behalf of her clients.  See Rule 2.1: "In representing a client, a lawyer shall exercise independent professional judgment ***."

We observe, too, there is no indication in this record that the WSBA uses percentage referral fees for inappropriate purposes.  The WSBA contends it uses the money to finance the Service and for 
pro bono
 activities.  We see no evidence to the contrary.

We do not purport to define the permissible limits and uses of percentage referral fees.  Until otherwise persuaded, we are willing to rely on the good faith and public spirit of members of the bar associations.

At the same time, we do not mean to license unbridled nest-

feathering.  Rule 7.2(b) must be complied with in a manner consistent with the overriding policy of the RPC:

"These rules reflect the sensitive task of striking a balance between making available useful information regarding the availability and merits of lawyers and the need to protect the public against deceptive or overreaching practices."  See Preamble, Illinois Rules of Professional Conduct, August 1, 1990.

In short, vigilance is required.

CONCLUSION

We conclude the referral agreement in this case was reasonable and enforceable.  The trial court correctly enforced it.  The trial court's order awarding the West Suburban Bar $31,250 is affirmed.

AFFIRMED.

Cahill, P.J., and Cerda, J., concur.

APPENDIX

Alabama

Alabama Formal Ethic Opinion RO-95-08 (1995)

"A percentage fee program is an ethically permissible way to generate funds for a lawyer referral service, as long as the income generated thereby is used to defray the costs of operating the service or to support other public service programs."

Arkansas

Arkansas Bar Association Advisory Opinion 95-01 (June 1995)

Arkansas Rules of Professional Conduct, adopted in 1986, provided in Rule 5.4(a) "a lawyer shall not share legal fees with a non-lawyer" and in Rule 7.2(c) "a lawyer shall not give anything of value to a person for recommending the lawyer's services except that a lawyer may pay *** the usual charges of a not-for-profit lawyer referral service."  The "usual charges" could be a percentage of the fee earned.  Other issues, including the reasonableness of the charges and whether a maximum and minimum fee should be established, were left to the good judgment and discretion of the Lawyer Referral Service Committee.

3. 
California

Opinion 1983-70 (1983)

Attorney who participates in an approved bar association lawyer referral service may pay a percentage of his fee collected but may not raise fees to cover the charge for the service.

Connecticut

Connecticut Bar Association Informal Opinion 87-9 (1987)

Interpreting Rule 7.2(c) of the Connecticut Rules of Professional Conduct, the Committee on Professional Ethics was asked to decide whether a lawyer referral service could charge a "fixed percentage" of the fee received by the referred attorney.  It saw "no ethical problem" with the practice. 

Illinois:

Chicago Bar Association

Docket #75-38 (1975)

CBA Committee on Professional Responsibility, interpreting DR 2-103, determined lawyer participants in bar-sponsored lawyer services may ethically contribute to the expense of operating the service by remitting a reasonable percentage of the fees collected by the referred attorney.  Because the CBA had adopted the ABA Code, the Committee said the CBA "should be deemed to have incorporated the settled construction of its provisions by the ABA (referring to ABA Formal Opinion 291 (1956) and ABA Informal Opinion 1076 (1968)).

Docket# 87-1 (1987)

Despite the omission of a specific reference to lawyer referral services in the Illinois Code of Professional Responsibility (adopted in 1980), the Professional Responsibility Committee of the CBA again decided lawyer participants in bar-

sponsored lawyer referral services could ethically be required to contribute to the expense of operating the service by remitting a reasonable percentage of the fees collected by the referred attorney.  The decision was based on the "overwhelming authoritative interpretation under the Canons and the long history of permitting such programs in the State of Illinois."

Kentucky

Kentucky Bar Association Opinion KBA E-288 (September 1984)

Ethically proper for an attorney who is a member of the Kentucky Bar Lawyer Referral Service to "participate in that organization's proposed plan for funding its expenses" including the payment of 10% of any fee collected from a referral.

Maryland

State Bar Association Opinion 82-35 (February 1982)

A state bar referral service may collect a surcharge on all contingency fee cases referred by the service.

Ohio

Ohio Opinion 92-1 (February 1992)

Because Ohio Disciplinary Rule 2-103(c) expressly allowed a lawyer to request referrals from a lawyer referral service operated, sponsored, or approved by a bar association and "pay the fees incident thereto," it was not unethical for a bar association to require a lawyer to pay a percentage of the legal fees earned from clients referred 
if needed to support the service to the public
.  The Board approved of the practice only if: the attorney did not raise rates to cover the fee and the funds raised by the service were used to cover the administrative costs of operating the service and for educating the public on the availability of legal services.

Pennsylvania

Opinion 93-162 (October 1993)

Interpreting Rule 7.2(c) of the Pennsylvania Rules of Professional Conduct (identical to ABA rule 7.2(c)) the PBA found the "earned fee" method of financing bar-sponsored lawyer referral services had become so widely adopted over the years it is one of the acceptable "usual charges of a not-for-profit lawyer referral service within the contemplation of Rule 7.2(c)."  The only requirement was that the referred attorney not increase his normal fee to cover this cost and that any profit realized by the bar association be utilized for pro bono purposes. 

Rhode Island

State Bar Association Ethics Advisory Opinion 95-3 (1995)

Asked to consider whether a lawyer could be required to turn over 10% of any fee over $500 to a lawyer referral service, the advisory panel interpreted Rule 7.2(c) of the Rhode Island Rules of Professional Conduct [which allows attorneys to pay the "usual charges" of a not-for-profit lawyer referral service] in light of Rule 5.4(a) [which prohibits lawyers from sharing fees with non-

lawyers].  The Advisory Panel decided the percentage fee was a "well established method of funding lawyer referral services."

Tennessee

Opinion 89 F-115 (September 1988)

A fee of 10% of the amount collected by the referred attorney could be charged by a lawyer referral service if the funds collected were used "exclusively for the administration expenses of the referral service" and members did not pass on the cost to the clients by increasing rates.

Opinion 502 (August 1994)

Lawyer may remit to a non-profit referral agency a percentage of the legal fee derived from the referral as long as the amount is reasonable.

Wisconsin

State Bar Formal Opinion E-88-8 (1988)

Rules of Professional Conduct permit an attorney registered with a bar-sponsored lawyer referral service to remit an agreed percentage of attorney's fees collected.  Fee should be reasonably related to the cost of administration and referred attorney may not raise his normal rates to cover this cost.

FOOTNOTES
1:
The Illinois State Bar Association, in 1975, before enactment of Rule 7.2(b), did say it was improper for a referral service to share in a fee when it did no work on the case, but opinion 506 was suspended January 16, 1976.