In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-2364, 99-2707

Howard R. Montgomery, for himself and for
all others similarly situated,
for themselves and
for Aetna Plywood,
Inc. Profit Sharing Plan as
successor to Aetna Plywood, Inc.,
Employee Stock Ownership Plan,

Plaintiffs-Appellants,

v.

Aetna Plywood, Incorporated, et al.,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 3193--William T. Hart, Judge.

No. 00-1033

Clinton A. Krislov and Krislov
& Associates, Ltd.,

Plaintiffs-Appellants,

v.

Aetna Plywood, Incorporated, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 5531--William T. Hart, Judge.

Argued September 11, 2000--Decided October 26, 2000

  Before Bauer, Evans, and Williams, Circuit
Judges.

  Williams, Circuit Judge.  This appeal
arises out of a class action suit brought
by Howard Montgomery on behalf of

participants in Aetna Plywood's Employee Stock Ownership Plan ("ESOP") against Aetna Plywood and its directors, based on an allegation that Aetna Plywood had not adequately compensated the ESOP participants when the directors caused the ESOP to sell its shares back to the company. Eventually, the parties reached a pair of settlements. This appeal, however, does not involve, directly at least, the settlements or the underlying class action suit. Rather, it involves three ancillary matters the district court decided: the legality of an ownership restructuring plan Aetna Plywood proposed, the amount of the settlement fund that should be awarded to class counsel and the lead plaintiff, and the proper disposition of a subsequent state law action brought by class counsel to enforce a term in one of the parties' settlement agreements. With one minor exception, we affirm the district court's decisions on each of these matters.

I

Just before Aetna Plywood purchased the stock owned by its ESOP, the ESOP owned 95% of the company's outstanding shares. The remaining 5% was owned by Jeff Davis, who served as Aetna Plywood's chief executive officer, the chairman of its board of directors, and a member of the committee that managed its ESOP. Sometime in mid-1992, Davis, along with the other three individuals who served on both Aetna Plywood's board of directors and its ESOP committee, caused the ESOP to sell its shares of Aetna Plywood stock to the company. This transaction left Davis as the sole stockholder in Aetna Plywood.

Believing that Davis and Aetna Plywood's other directors had caused the ESOP to sell its shares of Aetna Plywood stock for too low a price, Howard Montgomery, a former Aetna Plywood employee and ESOP participant, filed, in May 1995, a class action suit on behalf of ESOP participants against Aetna Plywood and the directors who had approved the stock sale ("the Montgomery defendants"). The class complaint alleged that, by causing the ESOP to sell its shares at a below-market-value price, Aetna Plywood's directors had breached fiduciary duties placed on them by ERISA and Delaware corporate law.

The case eventually went to trial before the district court in June 1998. On the third day of the trial, two directors, both of whom were outside directors, entered into a settlement with the class. They agreed to pay the class $800,000 in exchange for a release from liability. At the conclusion of the trial, the district court found Aetna Plywood, Davis, and the other remaining defendant-director, John Francione ("the trial defendants"), liable for causing the ESOP to sell its interest in Aetna Plywood without ensuring that the ESOP received adequate consideration. The district court further found that the defendants had under-valued the ESOP's stock by $70 a share. After making adjustments for the settlement with the outside directors and prejudgment interest, the court arrived at a damages figure of $7,243,820.17.

Following the district court's decision, the trial defendants initiated negotiations with the class, fearing that the judgment entered against them would bankrupt Aetna Plywood. These negotiations proved fruitful and the parties reached a comprehensive settlement agreement. The trial defendants agreed that Aetna Plywood would pay the class $6.1 million cash, give the class 20% of the company's stock, and, if Aetna Plywood were to be sold within three years, turn over to the class 25% of the sale proceeds in excess of $6.1 million. Davis promised to relinquish his Aetna Plywood stock and to give up all control of and involvement in the company. He also agreed to relinquish his ownership interest in the company's headquarters, to forfeit any monies realized from the sale of his shares, and to forego any future remuneration from the company. Moreover, both Davis and Francione agreed to give up any recovery they might be entitled to as ESOP participants.

In exchange for these promises, the class agreed to release all claims asserted and assertable against the trial defendants and promised not to seek further assets from Davis. In addition, class counsel agreed to limit any attorneys' fee request to one-third of the settlement recovery plus reimbursements of costs and expenses not exceeding $500,000, and the defendants promised not to oppose a request within

those bounds. The parties also agreed that Aetna Plywood would consult with class counsel regarding any sale or change of control transaction involving the company and that Aetna Plywood could submit any proposal in this regard, to which class counsel objected, to the court for approval. Finally, the parties provided that the district court would retain jurisdiction over the case to enforce the terms of the settlement agreement.

After carefully reviewing the mid- and post-trial settlements reached by the parties, the district court, in March 1999, approved both settlement agreements, finding each to be fair, reasonable, and adequate. In the same order, the district court took up class counsel's requests for attorneys' fees, costs, and an incentive award for the lead plaintiff. Although none of the Montgomery defendants challenged class counsel's requests, as the requests were within the bounds established by the settlement agreement, objections were received from class members. Primarily, these came from three Aetna Plywood managers, Larry Rassin, Keith Weller, and Jon Minnaert. The district court reviewed carefully both class counsel's requests and the objections submitted, as well as the numerous considerations relevant to determining an appropriate attorneys' fee, expense reimbursement, and incentive award. Based on this review, and using the percentage-of-recovery method for awarding attorneys' fees, the court awarded class counsel 25% of the net settlement recovery (amounting to $1,655,177.71), 25% of any future class recovery, and $279,289.15 in expense reimbursements. The court declined to award class counsel any portion of the stock promised to the class and refused to grant the lead plaintiff an incentive award. A subsequent order granted class counsel an additional $200,000 in expense reimbursements, but reaffirmed the district court's refusal to grant a reimbursement for computer-assisted legal research costs.

At the same time the district court was considering the fairness of the two settlements and the appropriateness of class counsel's requests for attorneys' fees, costs, and an incentive award, the parties also brought before the court an

ownership restructuring plan proposed by Aetna Plywood. Pursuant to this plan, which was submitted to the district court in February 1999, Davis would relinquish his stock to Aetna Plywood in exchange for $1,000 and the company would give that stock (as well as the $1,000) to the class; then, Aetna Plywood would issue new stock representing 80% of the total number of outstanding shares; finally, Aetna Plywood would turn 29% of the company's stock over to its attorneys to pay for services rendered and would sell the remaining 51% to a group of managers (Rassin, Weller, Minnaert, and Scott Halden) for $4,000. The class objected to the plan on the ground that it did not maximize the value Aetna Plywood could have received for selling a controlling interest in the company. After briefing on the issues raised by the restructuring plan, the district court, in April 1999, gave its consent to the proposed restructuring.

Around this same time, class counsel discovered that Aetna Plywood had funded the objections Rassin, Weller, and Minnaert filed opposing class counsel's request for attorneys' fees. Believing this violated the parties' settlement agreement, class counsel filed suit against Aetna Plywood, Rassin, Weller, Minnaert, and Halden ("the Krislov defendants") in the Circuit Court of Cook County, Illinois, asserting a breach of contract claim. In response, the Krislov defendants removed the case to federal court and filed a motion to dismiss. Class counsel then filed a motion to remand the case to state court and, in the alternative, asked for leave to file an amended complaint. The district court denied the motion to remand, but granted class counsel leave to amend. Class counsel then added claims of aiding and abetting a breach of contract and intentional interference with a contractual relationship against the individual Krislov defendants. Following a second motion to dismiss, the district court, in December 1999, concluded that class counsel had failed to state a claim against the Krislov defendants and dismissed class counsel's suit.

In July 1999, the district court entered final judgment in the Montgomery class action suit, and in December 1999, did the same in the Krislov suit. Timely

appeals were filed in both cases.

II

A.  Legality of Ownership Restructuring Plan

The first issue raised in these appeals concerns the district court's decision to allow Aetna Plywood to go forward with its proposed ownership restructuring plan. The class contends that the restructuring plan violates Delaware corporate law by giving away control of the company for less than fair market value. Specifically, the class alleges that, in adopting the restructuring plan, Aetna Plywood's board of directors breached its fiduciary duty to maximize the value a corporation's shareholders receive in a corporate control transaction./1 See Paramount Communications Inc. v. QVC Network Inc., 637 A.2d 34, 48 (Del. 1994). The district court rejected the class's objections on the ground that the company's stock belonged to Davis and he could do with it what he wanted. The district court's conclusion rests on a faulty premise, however; Davis's stock went to the class (and even then only after being sold to Aetna Plywood), while the stock given to the company's attorneys and sold to the management group was newly-issued stock. On appeal, the Montgomery defendants attempt to defend the district court's decision on the grounds that (1) the class lacks standing to challenge the restructuring plan under Delaware law; and (2) the proposed transaction did not trigger any fiduciary duty toward the class to maximize value received. We only discuss the first of these contentions, however, as it is dispositive.

Delaware law requires that the plaintiff in a derivative suit (the form that the parties assume the class's objections take) be a stockholder of the corporation at the time of the challenged transaction. 8 Del. Code sec. 327. To determine whether the class has standing under this rule, we must determine who is a "stockholder" and what is the "time of the challenged transaction" for purposes of 8 Del. Code sec. 327.

Taking the second question first, a review of Delaware law reveals that the "time of the challenged transaction" depends on precisely what about the

transaction is being challenged. Where the plaintiff complains of the terms, rather than the actual consummation, of a transaction, the "time of the challenged transaction" is when the terms of the transaction are established. 7547 Partners v. Beck, 682 A.2d 160, 161-63 (Del. 1996). For instance, in 7547 Partners, the Delaware Supreme Court considered a case involving a plaintiff that bought stock in an initial public offering at a price much higher than that paid by certain corporate executives to whom the corporation's board of directors had decided to sell stock in a private placement accompanying the public offering. Id. at 161. The court determined that the plaintiff lacked standing because the challenged transaction was the decision to set the price for the private placement, a decision that took place before the plaintiff bought its stock. Id. at 162-63. The court reasoned that because the plaintiff challenged only the terms of the private placement, rather than the technicality of its consummation, the challenged transaction took place when the terms of the private placement were established. Id. at 163. Here, the class complains only about one of the terms of the restructuring plan--the price at which the board of directors sold control of Aetna Plywood--a term that was announced (and therefore established) one month prior to final approval of the parties' settlement agreement. Thus, the challenged transaction took place before the class came into actual possession of the Aetna Plywood stock promised to it.

   This conclusion brings into focus the question we have yet to answer--who, for standing purposes, is a "stockholder." In light of our conclusion about when the transaction the class challenges took place, the class will have standing only if a prospective stockholder can be considered a "stockholder" for standing purposes. Unfortunately for the class, Delaware law treats actual stockholders and prospective stockholders quite differently. Most significantly, prospective stockholders are not owed fiduciary duties. Anadarko Petroleum Corp. v. Panhandle Eastern Corp., 545 A.2d 1171, 1174-77 (Del. 1988). Fiduciary duties arise only after a stockholder comes into actual possession of stock, regardless of how certain the stockholder's future

ownership was when the challenged transaction took place. Id. For instance, in Anadarko Petroleum, the Delaware Supreme Court held that directors of a wholly-owned corporate subsidiary about to be spun off owed no fiduciary duties to the post-spin-off stockholders even though those stockholders had been identified and those holders' future stock interests were being traded on the New York Stock Exchange. Id. The court reasoned that because the prospective stockholders did not acquire legal or equitable title over the stock of the subsidiary until the day the stock was distributed, they were not owed fiduciary duties until that day. Id. at 1176. That prospective stockholders are not owed fiduciary duties under Delaware law leads us to conclude that prospective stockholders would not be considered "stockholders" for standing purposes. Accordingly, we hold that the class was not a stockholder at the time of the transaction it challenges.

In an effort to avoid the necessary implication of this conclusion--that it lacks standing to challenge the restructuring plan under Delaware law-- the class contends that ERISA and the settlement agreement itself grant the class standing. Certainly the settlement agreement and perhaps ERISA as well grant the class standing to challenge the restructuring plan, but, so far as we can tell, neither grants standing to raise a challenge under Delaware law that Delaware law itself would not permit. And, the class has not cited any legal authority to the contrary, nor has it articulated a theory that suggests we should rule otherwise. As the class only challenges the restructuring plan under Delaware law, it must satisfy the standing requirements of 8 Del. Code sec. 327./2 Because it was not a stockholder at the time of the challenged transaction, the class can not do so. Therefore, we must affirm the district court's rejection of the class's challenge to Aetna Plywood's ownership restructuring plan.

B.  Attorneys' Fees, Costs, and the Incentive Award

Class counsel challenges several aspects of the district court's decisions regarding attorneys' fees, costs, and the

requested incentive award for the lead plaintiff. Specifically, counsel argues that the district court should have: (1) awarded it 33-1/3% of the gross settlement recovery; (2) awarded it a like percentage of the stock promised to the class; (3) included computer-assisted legal research costs in the expense reimbursement; and (4) granted the lead plaintiff an incentive award. We review the district court's decisions respecting these matters for abuse of discretion, except where counsel challenges the methodology employed by the district court, in which case our review becomes plenary. Harman v. Lyphomed, Inc., 945 F.2d 969, 973 (7th Cir. 1991).

Before getting to class counsel's specific challenges, we note that in cases like the present one, where the district court is asked to award reasonable attorneys' fees or reasonable costs, the measure of what is reasonable is what an attorney would receive from a paying client in a similar case. Cook v. Niedert, 142 F.3d 1004, 1012 (7th Cir. 1998); In re Continental Ill. Sec. Litig., 962 F.2d 566, 568, 570, 573 (7th Cir. 1992). This standard obviates, at least to a certain extent, the need to assign a value to an attorney's work based on nothing more than a subjective judgment regarding that work. It gives a court a background against which to work by requiring courts to look to evidence regarding the sorts of fees and costs generated in analogous suits funded by paying clients. To the extent possible, then, our analysis in this case will be guided by this methodology.

We begin with class counsel's contention that its fee should be based on the gross settlement recovery--the settlement recovery before counsel's cost award is deducted--rather than the net recovery-- the recovery after the cost award is deducted. Counsel cites no authority standing for the proposition that gross recovery is to be preferred over net recovery as the basis for calculating a fee under the percentage-of-recovery method, nor has our review of the relevant case law revealed any authority to that effect. Moreover, counsel has not come forward with evidence indicating that private contingent fee agreements typically employ one or the other basis, nor has counsel suggested any logical

reason that gross recovery should be the preferred basis. As such, it is impossible to conclude that the district court abused its discretion in using net recovery as a basis for awarding attorneys' fees.

We consider next class counsel's complaint that the district court should have awarded counsel a greater percentage of the settlement recovery, 33-1/3% rather than 25%. Counsel contends that the district court, in adopting what it found to be the median percentage-of-recovery figure used in securities cases, failed to adequately appreciate the riskiness of this case. The district court concluded that the case was not particularly risky because the fact (although not the amount) of the Montgomery defendants' liability could not be doubted. Although a reasonable argument can be made that the case was more risky than the district court thought, the district court's assessment of the risk involved is not without support. It is fairly obvious that at least some of the Montgomery defendants (most notably Jeff Davis) plainly were not acting in the best interests of Aetna Plywood's shareholders or in the best interest of the ESOP. Moreover, a lack of risk was not the only reason the district court gave for refusing to select a percentage-of-recovery figure greater than the median; the court also noted that the large settlement recovery counseled against a high figure. In fact, the court undertook a careful analysis of both the factors weighing in favor of a greater-than-median percentage figure and those weighing against such a figure. Because it is impossible to say that the district court's balancing of these factors was unreasonable, we cannot conclude that the district court abused its discretion in selecting 25% as the appropriate percentage-of-recovery figure.

We come, then, to class counsel's challenge to the district court's refusal to award counsel a portion of the stock the settlement agreement promised to the class. Counsel contends that the stock obtained for the class should be treated just as the cash obtained for the class is treated. The district court's only reason for not awarding counsel stock was that counsel's fee was already

substantial. We do not believe this is an adequate reason for denying counsel stock. Stock, like cash, is simply a form of compensation secured on the class's behalf. There is no reason it should be treated differently than cash. In fact, treating it differently creates perverse incentives for attorneys by encouraging them to seek all cash recoveries even when a cash and stock recovery would be in their clients' best interest or would otherwise be more appropriate. If a court believes a fee award would be too large if stock is made part of the award, then it should reduce the percentage-of-recovery figure (something which, as noted above, the district court here essentially did). Although we have not discovered any significant authority on this matter, and the record does not reveal how private contingent fee arrangements in securities cases treat awards of stock, we are convinced that the district court's refusal to award class counsel any of the stock obtained for the class is unreasonable. As such, we conclude that the district court abused its discretion in so ruling.

We next turn to class counsel's claim that the district court erred in refusing to include in the expense reimbursement award computer-assisted legal research costs. Counsel contends that the district court should have included these costs in the reimbursement award because the private market compensates lawyers for these costs and to do otherwise would violate the ethical rules regarding the payment of costs by attorneys. Counsel's arguments are misguided. Computer research charges are considered a form of attorneys' fees. Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago, 38 F.3d 1429, 1440-41 (7th Cir. 1994); Harman, 945 F.2d at 976. The idea is that computer-assisted legal research essentially raises an attorney's average hourly rate as it reduces (at least in theory) the number of hours that must be billed. Haroco, 38 F.3d at 1440-41; Harman, 945 F.2d at 976. As a form of attorneys' fees, the charges associated with such research are not separately recoverable expenses. When a court uses the percentage-of-recovery method of calculating attorney's fees, such charges are simply subsumed in the award of attorneys' fees./3 Here, therefore, counsel's arguments regarding the

necessity of separately recoverable computer research charges are not persuasive because counsel has already been compensated for the computer research charges it incurred through the attorneys' fee awarded it. Thus, we conclude that the district court did not abuse its discretion or otherwise err in excluding computer-assisted legal research charges from the expenses awarded class counsel.

Finally, we take up class counsel's challenge to the district court's decision to deny the lead plaintiff an incentive award for his participation in this case. Incentive awards are appropriate if compensation would be necessary to induce an individual to become a named plaintiff in the suit. Cook, 142 F.3d at 1016; Continental Ill. Sec. Litig., 962 F.2d at 571-72. Counsel claims that the circumstances of the lead plaintiff's participation require that he be awarded $30,000 out of the settlement fund. Without directly addressing whether the lead plaintiff's participation justified an incentive award, the district court gave three reasons for refusing to grant such an award: (1) counsel's failure to make any serious argument in favor of granting such an award (especially in the amount requested); (2) counsel's failure to include in the most recent notice to the class adequate information regarding counsel's plan to seek an incentive award; and (3) the possibility that counsel could pay an incentive award out of the fees awarded it.

Although the district court's last reason for its ruling is not a particularly persuasive one, the other two carry significant weight. Counsel's uncertain and less than vigorous efforts to seek an incentive award in the district court can reasonably be interpreted as an abandonment of its request for such an award. In any event, the case for granting the lead plaintiff in this case an incentive award is not so overwhelming as to remove any doubt about whether an award would be appropriate. While the lead plaintiff was the only named plaintiff, was subjected to a rough deposition, and was portrayed by the Montgomery defendants in an unfavorable light during the litigation, it does not appear that he had to devote an

inordinate amount of time to the case or that, as a former employee, he suffered or risked any retaliation by Aetna Plywood. Accordingly, we conclude that the district court did not abuse its discretion in refusing to grant the lead plaintiff an incentive award.

## C.  State Law Action

The final issue in this case is whether the district court properly disposed of class counsel's lawsuit against Aetna Plywood and the four managers who purchased control of the company ("the Krislov suit"). The district court assumed jurisdiction over the suit, which was filed originally in state court and alleged a variety of state law causes of action arising out of a purported breach of the attorneys' fees provision of the settlement agreement, and dismissed the suit for failure to state a claim. Class counsel challenges both the district court's refusal to remand the lawsuit back to state court and the district court's decision to dismiss the lawsuit on its merits. We consider counsel's jurisdictional challenge first.

### 1.  Assumption of Jurisdiction

Class counsel contends that there was no basis for removing the Krislov suit to federal court and that, therefore, the district court should have remanded the case back to state court. Ordinarily, a case filed in state court can be removed to federal court only if the case falls within the original jurisdiction of the federal district courts. 28 U.S.C. sec. 1441. Because it is based entirely on state law and involves non-diverse parties, however, the Krislov suit does not come within the original jurisdiction of the federal district courts. The district court nevertheless concluded that removal was proper under the doctrine of ancillary jurisdiction since the lawsuit involved claims relating to an alleged breach of the settlement agreement resolving the Montgomery case and the court had expressly retained jurisdiction to enforce the terms of that settlement agreement when it entered a final judgment in the Montgomery case.

Precedent in this circuit firmly establishes that the doctrine of ancillary jurisdiction confers federal

jurisdiction over a case otherwise outside federal jurisdiction in which the plaintiff seeks to enforce a settlement agreement, as long as the district court incorporated the agreement into its final order or retained jurisdiction to enforce the terms of the agreement. Ford v. Neese, 119 F.3d 560, 562 (7th Cir. 1997); In re VMS Sec. Litig., 103 F.3d 1317, 1321-22 (7th Cir. 1996); Lucille v. City of Chicago, 31 F.3d 546, 548 (7th Cir. 1994); McCall-Bey v. Franzen, 777 F.2d 1178, 1188 (7th Cir. 1985); see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381-82 (1994). Thus, where a party to a settlement agreement approved by a federal court brings a new suit in federal court alleging a breach of the agreement, federal jurisdiction exists over the suit, provided the federal court incorporated the agreement into its final order or reserved jurisdiction to enforce the agreement. See, e.g., Ford, 119 F.3d at 562; McCall-Bey, 777 F.2d at 1188-90.

What is less firmly established is when a case filed in state court that nevertheless comes within a federal court's ancillary jurisdiction may be removed. Our court addressed this issue in In re VMS Securities Litigation, 103 F.3d 1317 (7th Cir. 1996), which considered whether a pair of district courts had properly removed and enjoined a state law class action alleging fraud and misrepresentation relating to the settlement of a pair of prior class action lawsuits approved by those two district courts. The court first determined that the two district courts possessed ancillary jurisdiction over the state law actions at issue. Id. at 1321-23. The court then turned to whether the district courts had the authority to remove the state law actions from state court. Relying on authority from the Second Circuit, specifically In re "Agent Orange" Product Liability Litigation, 996 F.2d 1425, 1431-32 (2d Cir. 1993), the court concluded that the All Writs Act, 28 U.S.C. sec. 1651, which provides that federal courts may issue orders "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," granted the district courts the necessary authority. 103 F.3d at 1323-24. The court explained, however, that the All Writs Act does not permit removal in every

case. Id. at 1324. Again relying on the Second Circuit's decision in In re Agent Orange, the court suggested that only the presence of exceptional circumstances threatening the integrity of a court's rulings in complex litigation would justify removal under the All Writs Act.\4 Id.

Reading In re VMS Securities together with this circuit's law on ancillary jurisdiction, two different standards for exercising ancillary jurisdiction emerge. In a suit otherwise outside federal jurisdiction brought in federal court, a district court may assume jurisdiction over the suit if it satisfies the ordinary requirements for ancillary jurisdiction. In a suit otherwise outside federal jurisdiction brought in state court, a district court may assume jurisdiction over the suit if it satisfies the ordinary requirements for ancillary jurisdiction and exceptional circumstances threatening the integrity of its prior rulings are present./5

Strictly speaking, the Krislov suit does not involve the sort of extraordinary circumstances described in In re VMS Securities. Any threat it presents to the integrity of the district court's rulings in the Montgomery case is minimal, involving ordinary collateral estoppel and res judicata issues. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998) (holding that such a threat would not supply exceptional circumstances); In re Agent Orange, 996 F.2d at 1431 (suggesting the same). And, the Montgomery case was not particularly complex litigation--it was a relatively straight-forward class action.

Still, the Krislov suit is not an ordinary action to enforce a term of a settlement agreement involving a dispute regarding whether a party has reneged on its post-judgment obligations through some out-of-court action or failure to act. Rather, the Krislov suit involves a dispute over whether the Krislov defendants reneged on their pre-judgment obligations by obtaining a ruling (they promised not to seek) from the district court. The district court is uniquely positioned to resolve this sort of dispute. It involves events that occurred before the court and revolves, in part, around the impetus for one of the

district court's rulings. Moreover, it would be awkward, to say the least, for a state court to pass on certain issues raised by this case, such as what prompted the district court to rule in the way it did. In our view, the unusual nature of the Krislov suit--involving the alleged procurement of a court ruling through a breach of a pre-judgment settlement obligation--does present a set of circumstances that make it appropriate for a federal court to remove a case from state court in aid of its jurisdiction. Therefore, although it does not involve the sort of extraordinary circumstances described in In re VMS Securities, we conclude that the Krislov suit does involve a set of extraordinary circumstances that justifies removal under the All Writs Act. Accordingly, the district court properly assumed jurisdiction over the Krislov suit and did not err in refusing to remand the case to state court.

   2.  Merits

   Class counsel also contends that the district court erred in dismissing the Krislov suit on its merits. The suit alleged a breach of contract claim against Aetna Plywood and the four managers who purchased control of the company, as well as claims of aiding and abetting a breach of contract and intentional interference with a contractual relationship against the individual defendants, all arising out of the defendants' efforts to oppose class counsel's request for attorneys' fees, in violation of the settlement agreement resolving the Montgomery case. In dismissing the lawsuit, the district court concluded that class counsel was collaterally estopped from arguing that the amount of attorneys' fees the court awarded was other than the proper amount and that, consequently, counsel could not establish that the alleged breach of contract (or associated aiding and abetting and intentional interference) caused it any damages. On appeal, the Krislov defendants advance this argument, as well as several others, in support of the district court's decision. We need not go through each argument they make, however, as their argument that class counsel cannot establish causation is dispositive.

The Krislov defendants argue that, because the district court made an independent determination as to the appropriate attorneys' fee (as it is required to do, see Strong v. BellSouth Telecomms. Inc., 137 F.3d 844, 849-50 (5th Cir. 1998)), class counsel cannot establish that they caused counsel's alleged damages, an element of each of the causes of action at issue, see Dallis v. Don Cunningham & Assocs., 11 F.3d 713, 717 (7th Cir. 1993) (tortious/intentional interference with contract); Gonzalzles v. American Express Credit Corp., 733 N.E.2d 345, 351 (Ill. App. Ct. 2000) (breach of contract); Restatement (Second) of Torts sec. 876 (1979) (aiding and abetting/6). We agree. It would beimpossible for class counsel to prove that the objections filed by Rassin, Minnaert, and Weller, rather than the district court's efforts in fulfilling its duty to independently evaluate counsel's attorneys' fee request, were the proximate cause of any alleged diminution of counsel's attorneys' fee award. The district court did cite the objections filed by Rassin, Minnaert, and Weller, but that only means that the court read, and perhaps was persuaded by, their objections, it says nothing about whether the court would have reached a different result in the absence of the objections or whether the objections caused the court to rule the way it did. In fact, assuming (as we always do) that the district court took its duty to independently evaluate class counsel's request seriously, the only proximate cause of the court's ruling could be its own determination that the amount of attorneys' fees awarded was an appropriate amount. In short, it is impossible, as a matter of law, to establish the proximate cause for a judicial ruling of the sort involved here. Accordingly, the Krislov suit deserved to be dismissed for failure to state a claim.

III

Because the class in the Montgomery case lacks standing to challenge Aetna Plywood's ownership restructuring plan, we affirm the district court's rejection of the class's challenge to that plan. We also affirm all of the district court's decisions regarding attorneys' fees,

costs, and the requested incentive award, except its decision to not award class counsel any of the Aetna Plywood stock obtained for the class, which we reverse. Finally, we affirm the district court's decision to dismiss class counsel's state law action.

Affirmed in part, Reversed in part.

/1 In passing, the class suggests that the reorganization plan also represents a waste of corporate assets, an independent breach of fiduciary duty, see Sanders v. Wang, No. 16640, 1999 WL 1044880, at *10 (Del. Ch. Nov. 8, 1999), but it does not pursue this theory with any vigor. In any event, the analysis that follows would apply equally to any claim based on such a theory.

/2 We note, nevertheless, that Delaware appears to have a doctrine of equitable standing that allows for standing in certain circumstances when 8 Del. Code sec. 327 would otherwise deny standing to a plaintiff. See Shaev v. Wyly, No. 15559-NC, 1998 WL 13858 (Del. Ch. Jan. 6, 1998), reargument denied, 1998 WL 118200 (Del. Ch. Mar. 6, 1998). But, the class does not invoke this doctrine and it is far from obvious that the doctrine would grant the class standing. As such, we decline to explore the possibility that the class may qualify for equitable standing.

/3 When a court uses the lodestar method of calculating attorney's fees, computer research charges are separately recoverable, but (and this is the important point) only as a type of attorneys' fee, not as an expense. Haroco, 38 F.3d at 1440-41.

/4 The court's ruling regarding removal under the All Writs Act is in accord with the weight of the authority from the other courts of appeals that have considered the issue. See Bylinski v. City of Allen Park, 169 F.3d 1001, 1002-03 (6th Cir. 1999); NAACP, Minneapolis Branch v. Metropolitan Council, 125 F.3d 1171, 1173-74 (8th Cir. 1997),

reinstated after remand, 144 F.3d 1168, 1171-72 (8th Cir. 1998); Davis v. Glanton, 107 F.3d 1044, 1047 n.4 (3d Cir. 1997); In re Agent Orange, 996 F.2d at 1431-32. But see Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1378-80 (11th Cir. 1998) (declining to take a position, but holding that removal was improper even if the All Writs Act might authorize removal in some cases); Hillman v. Webley, 115 F.3d 1461, 1467-69 (10th Cir. 1997) (rejecting the All Writs Act as a basis for removal). The only authority to the contrary, the Tenth Circuit's Hillman decision, which rests on circuit precedent holding that the All Writs Act does not independently confer federal jurisdiction, overlooks one of the key points underlying In re VMS Securities and the similar cases from other circuits. In those cases federal jurisdiction exists by virtue of the ancillary jurisdiction doctrine (though the other circuits do not use the term "ancillary jurisdiction"), not by virtue of the All Writs Act. The All Writs Act is simply the source of authority for removal.

/5   While the lack of symmetry between the treatment of cases filed in state court and federal court may appear to be incongruous, it is justified by the necessity of remaining faithful to the important limitations on the use of the All Writs Act. Moreover, a standard for removing a case from state court that is more demanding than the standard for assuming jurisdiction over a case filed in federal court pays heed to the legitimate comity concerns raised by the removal of a state law action that does not fall under any of the established heads of federal jurisdiction.

/6   Class counsel cites, and we have discovered, no Illinois case recognizing a cause of action for aiding and abetting a breach of contract, but counsel does point to sec. 876 of the Restatement (Second) of Torts, which sets out a cause of action for, among other things, providing substantial assistance or encouragement to another's

tortious acts. Because a breach of
contract is not a tortious act, sec.
876 does not support class counsel's
aiding and abetting claim, see
Reuben H. Donnelley Corp. v. Brauer,
655 N.E.2d 1162, 1169-71 (Ill.
App. Ct. 1995), but even if it did,
causation is an element of the
cause of action. Restatement (Second)
of Torts sec. 876 cmt. d (1979)
(noting that ordinary principles
of tort causation apply).